# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

_____

## AT BRIDGEPORT

Feb 11  5 05 PM '04
U.S. DISTRICT COURT
BRIDGEPORT CONN
FILED

| | |
|---|---|
| **HADLEY MACPHERSON (EGAN)** | **# 3:02CV1309  SRU** |
| and | |
| **RACHEL EGAN** | **FEBRUARY 10, 2004** |
| and | |
| **LOYAL EGAN** | |
| PLAINTIFFS | **CIVIL ACTION** |
| | |
| **VS.** | |
| | **LETTER TO COURT** |
| **ATTORNEY JOHN BERMAN** | |
| and | |
| **BERMAN, BOURNS, CURRIE, AARON, AND DEMBO** | |
| and | |
| **PAUL EGAN** | **JURY DEMANDED** |
| DEFENDANTS | |

# LETTER TO THE COURT

To the Honorable Judge Underhill;

The plaintiff is aware that she is late in filing her documents.

The plaintiff is submitting with this Letter to the Court, as an Exhibit,

a copy of her Complaint which is almost complete.

The plaintiff, in an effort to reduce the litigation to come, is averring with a

specificity that will make facilitate a faster disposition of the case.

The plaintiff is also aware that the allegations she is making are very serious due

to the professional reputations of the defendants involved, and is therefore, alleging with a

specificity that is fair to the nature of the allegations.

The plaintiff believes that she is not beyond her statute of limitations to include all

of the allegations and claims against the defendants so that all claims are decided together in one

suit.

The plaintiff understands that it may be too late in this case before this particular

Court, to submit the filings, but she will follow through by refilling if she has to, and if the Court

does not dismiss her with prejudice.

The plaintiff apologizes for the inconvenience to the parties and the Court.

Should she be allowed to continue before this Court under this docket number,

she will be requesting to put the case on an expedited track.

The plaintiff will not be seeking to hold any depositions, and is virtually ready for Trial, if she should survive in her claims against the defendants, and has no wish to prolong the litigation beyond what is necessary, or cause any defendant more time or inconvenience.

The plaintiff is attempting to bring in the completed document in the immediate day or two, and thanks the Court for its courtesy to her regardless of the documents acceptance.

Respectfully Submitted

Hadley Macpherson

Rachel Egan

Lisa Egan

Exhibit
A

NOT FILED
COMPLAINT

# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

## AT BRIDGEPORT

| | |
|---|---|
| **HADLEY MACPHERSON (EGAN)** | **# 3:02CV1309  SRU** |
| and | |
| **RACHEL EGAN** | **FEBRUARY 10, 2004** |
| and | |
| **LOYAL EGAN** | |
| PLAINTIFFS | **CIVIL ACTION** |
| | |
| VS. | |
| | **COMPLAINT** |
| **ATTORNEY JOHN BERMAN** | |
| and | |
| **BERMAN, BOURNS, CURRIE, AARON, AND DEMBO** | |
| and | |
| **PAUL EGAN** | **JURY DEMANDED** |
| DEFENDANTS | |

## **Allegation of Diversity Jurisdiction**

1.         The plaintiff alleges the following to the best of her belief and knowledge:

2.         The plaintiff claims diversity jurisdiction under 28 U.S.C. 1332, and

alleges:

3.         The plaintiff, Hadley Macpherson, (Lisa Egan), is a citizen of the state of

Pennsylvania.

4.         The plaintiff, Hadley Macpherson, (Lisa Egan),  resides at 3710 Hancock

Lane, Doylestown, Pennsylvania, and receives her mail at P.O. Box 501, Lahaska, Pennsylvania,

18931.

5.         This suit was filed in the previous legal name of "Lisa Egan" along with

"Hadley Macpherson", as the plaintiff, though historically known as "Hadley", carried the given

first name of "Lisa" until 1999, at which time, following her divorce, she legally dropped the un-

used "Lisa" along with the married name of "Egan".

6..         The plaintiff, Rachel Egan, is a citizen of the state of Pennsylvania.

7.         The plaintiff, Rachel Egan resides at 3710 Hancock Lane, Doylestown,

Pennsylvania, and receives her mail at P.O. Box 501, Lahaska, Pennsylvania, 18931.

8.         The plaintiff, Loyal Egan, is a citizen of the state of Pennsylvania.

9.         The plaintiff, Loyal Egan, resides at 3710 Hancock Lane, Doylestown,

Pennsylvania, and receives his mail at P.O. Box 501, Lahaska, Pennsylvania, 18931.

following her 1999 divorce.

10.         The defendant, Attorney John Berman, is a citizen of the state of

Connecticut.

11.            The defendant, Attorney John Berman, resides at           West Hartford, Connecticut.

12.            The defendant, Berman, Bourns, Currie, Aaron, and Dembo, is a citizen of the state of Connecticut.

13.            The defendant, law firm, Berman, Bourns, Currie, Aaron and Dembo, during the time of the events in question, has also gone by the name of Berman, Bourns, and Currie; Berman, Bourns, Currie, and Dembo;  Berman, Bourns, Aaron, and Dembo. Berman, Bourns, Currie, and Aaron.

14.            The defendant, Berman, Bourns, Currie, Aaron, and Dembo, (a.k.a. all names associated with it from June 1998 through November 2001) is a law firm that operates its main business out of its offices located at 900 Farmington Avenue, West Hartford, Connecticut.

15.            The defendant, Paul Egan, is a citizen of the state of Connecticut.

16.            The defendant, Paul Egan, resides at 44 Kendall Avenue, New Haven, Connecticut, and receives his mail at P.O. Box 83, Centerbrook, Connecticut, 06409.

.17.            The amount the plaintiff seeks to recover in damages is over $75,000.


## Cause of Action


18.            The plaintiff, Lisa Egan, and the defendant, Paul Egan, were married on October 9, 1984, and subsequently bore two natural children, child plaintiffs, Rachel Egan and Loyal Egan.

19.            From 1985 to 1997, the defendant, Paul Egan, committed acts of domestic violence against his wife, the plaintiff, Lisa Egan.

2

20.         When the family moved to Avon Connecticut in 1995, they began attending the Valley Community Baptist Church.

21.         The defendant, Attorney John Berman, was also an attendee and member of the Valley Community Baptist Church, as well as the church's attorney.

22..        In early October 1997, the defendant, Paul Egan, left the family home to force the plaintiff, Lisa Egan, to comply with his demand of obedience and submission, per the advice of his church leaders and church counselor, and in furtherance of the Promise Keepers standards that he and they wanted the couple to live by, to return only upon plaintiff's obedience.

23.         The defendant, Paul Egan, had confessed his anger problem to both the pastors of his church, Pastor Jay Abramson and Pastor Conrad Koch, as well as to several friends, citing the plaintiff's lack of submission as the cause of his rage.

24..        At the time of the October 1997 marital separation, Loyal Egan was 7 years old, and Rachel Egan was 12.

25.         Late in October 1997, the plaintiff, Lisa Egan, went to the church pastors, Pastor Jay Abrahmson, and Pastor Conrad Koch, and the church counselor, Karen Wenthe, all of whom were counseling the defendant, Paul Egan, and spoke to them on several occasions regarding the history of domestic violence, telling them she could not be any more submissive or obedient unless to her own physical and emotional detriment, and asked them repeatedly to aid her in stopping the defendant, Paul Egan, from his abuse of her, and to convince him to seek outside help in the Non-Violence Alliance Program, a therapy program for abusers.

26.         Pastor Jay Abrahmson, and Pastor Conrad Koch promised they would aid the plaintiff if she would not go to the police, but continued to tell her that her lack of obedience to the defendant, Paul Egan, and lack of submission to him, was the root cause of his violent

3

behavior, and that she needed to submit to his authority over her in order to have relief.

27.        Throughout October 1997, and November 1997, the defendant, Paul Egan, came to the family home, and committed further acts of violence against the plaintiff, Lisa Egan, and the plaintiff repeatedly went to the pastors to ask them to get him into the Non-Violence Alliance Program, which was met with continued admonition not to go to the police.

28.        In late November 1997, the plaintiff, Lisa Egan, phoned the Avon Police Department, telling them that she feared for her and her children's welfare  because the defendant, Paul Egan, had gone over to the family home in anger, and taken the shotgun when the plaintiff, Lisa Egan, was not at home, the child Rachel Egan, then 12, having seen him take it.

29.        The plaintiff, Lisa Egan, told the Avon Police that she feared the defendant, Paul Egan, would be back to use the gun on her, the children, or on himself, and asked them to confiscate the shotgun to prevent any crime from occurring.

30.        The Avon Police Department told the plaintiff there was nothing they could do since the shotgun was passed down to the defendant, Paul Egan, through the family, and though unlicensed, was therefore untouchable, unless or until it was used to commit a violent crime.

31.        In early December 1997, elder David Avezzi and Cynthia Aveezzi, went and spoke to both Pastor Conrad Koch, and Pastor Jay Abramson, and informed them that Paul Egan had personally confessed to them to habitually beating and smothering the plaintiff, Lisa Egan, and that they feared that the defendant would use the shotgun on the family, asking the pastors to intervene, to which they were told to stay out of things.

32..        On February 14, 1998, the defendant, Paul Egan, committed another violent act against the plaintiff, Lisa Egan, and the child plaintiff, Rachel Egan, made a physical

4

attempt to stop the defendant, Paul Egan, from harming the plaintiff, all witnessed by Loyal Egan

33.        Immediately following the violent event, that same day, the plaintiff Lisa

Egan, phoned the church, spoke directly to Pastor Conrad Koch, and took the children to the

Valley Community Baptist Church, where the children each separately met with the Conrad

Koch, as well as did the plaintiff, Lisa Egan, and as well as did the defendant, Paul Egan later

that same day.

34.        The plaintiff, Lisa Egan, once again, asked Pastor Conrad Koch to

convince the defendant, Paul Egan to enter the Non-Violence Alliance Program, or she would

have to take police action to protect herself and the children, as she was extremely frightened for

the family's safety, to which Pastor Koch once again told her not to contact the police.

35.        In early March of 1998, due to the recent violent event of February 14,

1998, and continued fear of the defendant, Paul Egan's, possession of the shotgun, the plaintiff,

Lisa Egan, went to the Avon Police Department to file a criminal complaint of Assault and

Battery, against the defendant, Paul Egan.

36.        Officer Whitton was the officer who took the plaintiff, Lisa Egan's

statement, and upon hearing that the defendant had committed habitual acts violence against the

plaintiff throughout the marriage, immediately advised the plaintiff that she needed to file for

Restraining Orders in Superior Court at Hartford..

37.        Officer Whitton questioned the plaintiff, Lisa Egan, as to why she had not

done so already, stating her lack of protective action made the allegations suspect...

38.        The plaintiff, Lisa Egan, then told Officer Whitton, that Paul Egan, had

confessed to his violent acts to at least six people who could verify the allegations she was

making, including the two pastors of her church who were also fully aware and had been

5

confessed to by the defendant, Paul Egan..

39.        When Officer Whitton, asked the plaintiff, why she had waited to file the

Complaint, the plaintiff, Lisa Egan, told Officer Whitton, that the pastor's at her church, Valley

Community Baptist Church, located in Avon, had repeatedly told her to hold off from taking any

police action, that they would get the defendant, Paul Egan into a program if she were patient.

40.        Officer Whitton, then however expressed shock, and disclosed that he

himself had a personal and religious connection with Pastor Jay Abramson, and could not believe

that Pastor Abramson would not have mandatorily reported the domestic violence due to the

presence of young children in the home, and went on to explain the Mandatory Reporter statutes

to the plaintiff, and the obligations of specific individuals under them.

41.        Officer Whitton, disclosed that he himself was an elder of his    church

located down the street from Valley Community Baptist Church, also evangelical. .

42.        Officer Whitton then instructed the plaintiff, Lisa Egan to go home and

wait for him to present her Complaint to the Prosecutor to see if the prosecutor would arrest the

defendant, Paul Egan, given the lapse in time from the latest incident.

43.        While the plaintiff, Lisa Egan, however, was still in the Avon Police

Department interview room, another police officer, Officer Jadovich, an elder at Valley

Community Baptist Church, came on shift, and seeing the plaintiff in the interview room, later

called Officer Whitton at his home that evening wanting to know why the plaintiff was at the

police station, and what for, to which Officer Whitton disclosed to him the reason.

44.        Officer Whitton then called the plaintiff, Lisa Egan, at her home the next

day, and told her of the phone conversation between he and Officer Jadovich the night before,

and that Officer Jadovich, stated his own disbelief in the allegations.

6

45.        Two days later, Officer Whitton, phoned the plaintiff, Lisa Egan, and asked her if she had filed for a Restraining Order yet, to which the plaintiff said she had obtained the form and was in the process of typing her statement to the Court.

46.        Officer Whitton then told the plaintiff not to file for her Restraining Order, but to contact Pastor Jay Abramson instead, instructing her at least three times to "Call Jay".

47.        When the plaintiff, Lisa Egan, asked what had happened to the criminal Complaint she had made, Officer Whitton told the plaintiff, that he never gave it to the Prosecutor as he knew the prosecutor would not issue an arrest.

48.        Officer Whitton continued to try to convince the plaintiff to refrain from filing for Restraining Orders, to which the plaintiff stated that she would not speak to the pastors any more about the issue, and that she was going to take action to protect her and her children..

49.        Several days later, the Avon Police Department contacted the Department of Children and Family Services, and sent them to investigate the Egan home as to the safety of the situation with regards to the two children, Rachel Egan and Loyal Egan.

50.        On or about April 4, 1998, Kimberly Innis, an investigator for the Department of Children and Family Services showed up unannounced at the Egan home, and entered to immediately investigate, and interview the two children, Rachel Egan and Loyal Egan, who were both home at the time.

51.        On  April 6, 1998, the Department of Children and Family Services determined that the allegations of "physical and emotional abuse and neglect of the children" had been "substantiated" against the defendant, Paul Egan.

52.        The Department of Children and Family Services immediately ordered the plaintiff, Lisa Egan, to obtain and maintain Restraining Orders against the defendant, Paul Egan,

on behalf of herself and her children, preventing the defendant, Paul Egan, from going to the family home, or going near the children, until measures could be taken to ensure their safety..

53.        The Department of Children and Family Services informed the plaintiff, Lisa Egan, that if she failed to seek the Restraining Orders, and allowed the defendant, Paul Egan, to come into the family home, or see his two children, Rachel Egan and Loyal Egan, the children would be immediately removed from the plaintiff's custody, and the plaintiff, Lisa Egan, herself would be charged with Child Endangerment, Abuse, and Neglect..

54.        The plaintiff, Lisa Egan, filed for a Restraining Order against the defendant, Paul Egan, on behalf of her and her two minor children, plaintiffs Rachel Egan and Loyal Egan, then aged 13 and 8.

55..        The plaintiff, Rachel Egan, filed for her own personal Restraining Order against her father, the defendant, Paul Egan.

56.        On April 7 , 1998, the defendant, Paul Egan, appeared without an attorney, at the Hartford Superior Courthouse, located at 95 Washington Street, in Hartford, to answer the allegations of abuse at a Hearing on the Restraining Orders.

57.        After meeting with a Family Relations officer, Laura Furniss, for over an hour, and reading the 32 page document of domestic violence allegations going back to the beginning of the marriage, the defendant, Paul Egan, admitted to the allegations in the Restraining Order document, and did not contest the plaintiff, Lisa Egan's application for protection, or Rachel Egan's application for protection, but agreed to the terms of the Civil Restraining Orders.

58.        The Family Relations officer, Laura Furniss, in the presence of the defendant, Paul Egan, then advised the plaintiff, Lisa Egan, to file for divorce, pro se if necessary

8

due to her lack of any money or assets of her own.

59.        The Honorable Judge Anne Dranginis, in Courtroom 300, then granted the Restraining Orders of both the plaintiff, Lisa Egan, for her and her two children, as well as the separate Restraining Order of Rachel Egan, then 13 years old, for herself alone.

60.        The Honorable Judge Anne Dranginis further ordered that the defendant, Paul Egan, be denied any access to the children for a period of six months, and ordered him to seek psychiatric/psychological treatment outside and apart from the church counselor he was presently seeing, as well as to continue to provide monetarily for the his wife and children during the sixth month period.

61.        Less than two weeks later, on  April 14, 1998, the defendant, Paul Egan, was arrested at Avon Community Baptist Church, for violating his Restraining Orders.

62.        The defendant, Attorney John Berman,  who was then the attorney for the Avon Community Baptist Church, was recommended to the defendant, Paul Egan, by the pastor, Jay Abramson, and subsequently engaged to legally represent the defendant, Paul Egan.

63.        On May 18, 1998, the plaintiff, Lisa Egan, filed for Divorce, pro se.

64.        On May 26, 1998, the defendant, Paul Egan, appeared for the first time with his attorney, the defendant, Attorney John Berman, in Family Court, at the Superior Court at 95 Washington Street, at Hartford, Connecticut.

65.        From his first appearance at that Contempt Hearing for Violation of Restraining Orders, on May 26, 1998, until his final appearance at a Hearing October 30, 2001, the defendant, Attorney John Berman represented the defendant, Paul Egan, in all Family Court and Criminal Court proceedings.

66.        The defendant, Attorney John Berman, represented the defendant,

9

Paul Egan, for all Pendente Lite Motions, for all litigation at the Divorce Trial itself, and for all Post-Judgment Motions, until November 2001, when discharged by defendant, Paul Egan.

67.        The defendant, Attorney John Berman, though representing the defendant, Paul Egan's interests, was completely aware, and had full and complete knowledge, both from the public knowledge at Valley Community Baptist Church, from his own dealings with his client in Criminal Court, and in the filings, that the defendant, Paul Egan, had historically been an admitted physical and emotional danger to his wife, plaintiff, Lisa Egan, and his two children, Rachel Egan, and Loyal Egan, and unchanged, was still a physical and emotional danger to his family as deemed so by the Department of Children and Family Services, and the Criminal and Family Courts.

68.        However, during that time period of May of 1999, through November 2001, the defendant, Attorney John Berman, in the course of representing his client, the defendant, Paul Egan, committed numerous intentional tortuous acts against the plaintiff, Lisa Egan, and the child plaintiffs, Rachel Egan and Loyal Egan, acts designed to knowingly put their physical and emotional welfare at risk.

69.        Further, during that time period of May of 1999, through November 2001, the defendant, Attorney John Berman, in the course of representing his client, the defendant, Paul Egan, committed numerous intentional tortuous acts against the plaintiff, Lisa Egan, and the child plaintiffs, Rachel Egan and Loyal Egan, acts designed to knowingly violate the laws and rules set up to protect domestic violence victims and their children..

70.        The defendant, Paul Egan, himself, with the help of his attorney, the defendant, Attorney John Berman committed numerous intentional tortuous acts against the plaintiff, Lisa Egan, and the child plaintiffs, Rachel Egan, and Loyal Egan, acts designed to

knowingly violate the laws and rules set up to protect domestic violence victims and their

children, and the plaintiff, Lisa Egan, and his children, child plaintiffs, Rachel Egan. and Loyal

Egan...

71.    The defendant, Attorney John Berman, during that same time period, in

the course of representing his client, the defendant, Paul Egan, committed numerous intentional

tortuous acts against the plaintiff, Lisa Egan, and the child plaintiffs, Rachel and Loyal Egan, in

an effort to financially impoverish the plaintiffs, and knowingly violate the statutes and Child

Support laws, court rules and regulations designed to ensure that no robber of children, and their

legal entitlements, takes place in the context or as a result of Divorce..

72.    The defendant, Attorney John Berman, was at all times aware that when he

was committing those intentional tortuius acts, he was violating the statutes, Child Support laws,

and court rules and regulations designed to ensure that no robbery of children, or their legal

entitlements, takes place in the context of a Divorce, and no deliberate robbery takes place of

another party as to marital assets and income.

73.    The defendant, Attorney John Berman, was at all times aware that when he

was committing those intentional tortuius acts, he was violating those statutes, court rules and

regulations designed to ensure that no robbery takes place of marital party as to division of

marital assets and income, or the apportionment and granting of Alimony..

74.    The defendant, Paul Egan, himself, during that same time period, with the

help of his attorney, the defendant, Attorney John Berman, committed numerous intentional

tortuous acts against the plaintiff, Lisa Egan, and the child plaintiffs, Rachel and Loyal Egan, in

an effort and with the design to financially impoverish the plaintiff, Lisa Egan, and the child

plaintiffs, Rachel Egan and Loyal Egan.

75.      The defendant, Attorney John Berman, at all times relevant to his committing the intentional tortuous acts complained of in this Compliant, was a partner of the law firm to which he was employed, the law firm known as the defendant, Berman, Bourns, and Currie, Aaron, and Dembo (a.k.a. all names forlaw firm from May1998 through November 2001)

76.      The defendant, Attorney John Berman, when he commited the intentional tortuous acts complained of in this Complaint, was at all times acting in the scope of his employment

77..      The defendant, Attorney John Berman, committed those intentional tortuous acts against the plaintiff, Lisa Egan, and the child plaintiff's Rachel Egan, and Loyal Egan, for the benefit of his client, the defendant, Paul Egan.

78.      .      The defendant, Attorney John Berman, committed those intentional tortuous acts against the plaintiff, Lisa Egan, and the child plaintiff's Rachel Egan, and Loyal Egan, for the benefit of himself and his law firm, the defendant, Berman, Bourns, Courrie, Aaron, and Dembo... (a.k.a. all other names for law firm used and included from 1998 through 2001)

79.      The defendant, Attorney John Berman, as an attorney and judge, had complete, superior, and special knowledge and understanding of the law, and of the wrongful advantage he was taking from his position of power over the lives, freedoms, and rights of the plaintiffs, Lisa Egan, Rachel Egan and Loyal Egan.

80.      The defendant, Attorney John Berman, in the course of his representation of the defendant, Paul Egan, knowingly and wrongfully took that  advantage over the plaintiffs, without the legal authority, priveledge, or consent entitling him to do so

81.      The defendant, Paul Egan, knowingly and wrongfully took that advantage

12

with the help of his attorney, defendant, Attorney John Berman, without the legal authority,

privaledge, or consent entitling him to do so.

82..       The defendant, Attorney John Berman, had full and complete knowledge,

and was at all times aware and could completely foresee to a substantial degree of certainty, the

damage that would result from the intentional tortuous acts he was committing against the

plaintiff, Lisa Egan, and child plaintiffs, Rachel Egan and Loyal Egan, acts alleged in the Counts

of this Complaint.

83.       Thee defendant, Paul Egan, had full and complete knowledge, and was at

all times aware and could completely foresee to a substantial degree of certainty, the damage that

would result form the intentional tortuius acts he was committing with the help of his attorney,

the defendant, Attorney John Berman, against the plaintiff Lisa Egan, and against his children,

child plaintiffs, Rachel Egan and Loyal.Egan.

84..       The defendant, Attorney John Berman, as an experienced attorney, and

lead partner of his firm, had full and complete knowledge, and superior knowledge, of the State

and Federal Statutes, and Superior Court rules and regulations he was violating when he

committed the intentional tortuous acts against the plaintiffs, alleged in the Counts of this

Complaint.

85.       The defendant, Attorney John Berman as an experience attorney, lead

partner of his firm, probate judge, had full and complete knowledge, and superior knowledge of

his legal and professional duty to abide by those laws, rules and regulations.

86..    .       The defendant, Attorney John Berman, as an experienced attorney, and

lead partner of his firm, had full and complete knowledge, and superior knowledge,  that when he

was committing the intentional tortuous actsagainst the plaintiff, Lisa Egan, and child plaintiffs,

Rachel Egan and Loyal Egan, he was violating the Attorney Code of Ethics.

87.        The defendant, Attorney John Berman, as judge, had full and complete knowledge, and superior knowledge, when he was committing the intentional tortuous actions against the plaintiffs, and alleged in the Counts of this Complaint, that he was violating the Judicial Canon.

88..        At all times, the defendant, Attorney John Berman, had superior knowledge of the law, financial resources, and legal power to continually harm the plaintiff, and the plaintiff was at all times helpless to stop or avoid that harm, as she was bound to the jurisdiction of the State of Connecticut, and bound by the defendant, Paul Egan's parental rights which gave him access to litigate against her, in the state of Connecticut, and thus continue to employ the services of the defendant, Attorney John Berman to harm the plaintiffs further, and without restraint.

89..        The plaintiff, Lisa Egan , a pro se un-represented by legal counsel, was at all times unable to prevent the defendant, Attorney John Berman, from committing tortuous acts against her and her children, plaintiffs, Rachel Egan and Loyal Egan, as they were legally unable to extricate themselves from dealings with the him since he was the attorney of record for the defendant, Paul Egan, during that the entire time from May 1998 through November 2001.

90..        The plaintiff, Lisa Egan, a pro se un-represented by legal counsel, could not legally refuse contact with the defendant, Attorney John Berman, in or out of the Superior Courthouse, as the defendant, Attorney John Berman's free will and legal right to represent the defendant, Paul Egan, and the defendant, Paul Egan's will and legal right to freely choose his own attorney,  overcame the plaintiffs' will to free herself and her children from more contact and eventual tortuous harm.

14

91.          The plaintiff, Lisa Egan, a pro se un-represented by counsel, was at all times unable to prevent the defendant, Paul Egan, from committing tortuous acts against her and the child plaintiffs, Rachel Egan and Loyal Egan, as the defendant, Paul Egan, had parental rights under the laws of the state of Connecticut,  which allowed him to force contact with the plaintiff, Lisa Egan, through his attorney, the defendant, Attorney John Berman, both in and out of Superior Court, at his own will, overcoming the plaintiffs will to free themselves from more contact and eventual tortuous harm.

92.          The plaintiff, Lisa Egan, a pro se un-represented by councel, was continually advised and warned by the children's court appointed attorney, Attorney Sally Hodgdon, to in no way take any legal action against the defendant, Attorney John Berman, or report the defendant, Attorney John Berman to the Grievence Board, as long as the litigation was ongoing, or else the plaintiff, Lisa Egan  would suffer the consequence of looking bad to the judges of the Superior Court Family Division, lose her credibility, and be in danger of losing her custody, her alimony, appropriate Child Support, and losing all post judgment issues, as long as the defendant, Attorney John Berman was the attorney of record for the defendant, Paul Egan

93.          The plaintiff, Lisa Egan, was unable to seek protection from the Avon Police Department, and  protect her family from the defendant, Attorney John Berman's actions, as officers on the Avon Police Force were elders and members at the Valley Community Baptist Church, where the defendant, Attorney John Berman was the church's attorney, and under the authority of Pastor James Abramson, and Pastor Conrad Koch.

94          Further, the Avon Police Department had already on another occasion months later during the pending Divorce, failed to arrest the defendant, Paul Egan, for a violation of his Criminal Protective Orders against the plaintiff,  and when the warrant needing to be

15

signed by the Prosecutor of West Hartford (the town next door having jurisdiction), was ignored, the plaintiff was quietly told that defendant, John Berman was the Probate Judge of West Hartford, and warned that she was out of her league, and should give up because some people were more powerful than they appeared, that the defendant, Attorney John Berman, had been a State Representative, and had too many friends in high places.

95.        Until December of 2001, when the plaintiff, Lisa Egan, and the child plaintiffs, Rachel Egan and Loyal Egan, learned that the defendant, Attorney John Berman had been discharged by the defendant, Paul Egan, and the plaintiffs no longer lived in the State of Connecticut, could the plaintiffs seek remedy for the tortuous acts committed against them by the defendant, Attorney John Berman, and the defendant, Paul Egan, without fearing and anticipating further infliction of harm, threat, and damage to their persons, rights, entitlements, assets, safety, and peace of mind.

96.        The intentional tortuous acts committed by the defendant, Attorney John Berman, against the plaintiff, Lisa Egan, and child plaintiff, Rachel Egan and Loyal Egan, committed for the benefit of his client, the defendant, Paul Egan, himself, and his law firm, Berman, Bourns, Currie, Aarron and Dembo, (a.k.a. all law firm names from May 1998 through November 2001) are here averred as items 97 through    , and incorporated into all Counts of this Complaint, Counts One through        as, well as items averred as items 1 though 95.

## COUNT ONE

97.        The plaintiffs incorporate items 1 - 96 into this Count of this Complaint, and further allege:

16

97.    The defendant, Attorney John Berman, in the summer of 1998, used methods of coercion, extortion, and threats, in a series of letters he sent to the plaintiff, Lisa Egan, in an attempt to force the plaintiff to allow his client, the defendant, Paul Egan, to have illegal visitation with his son, child plaintiff, Loyal Egan, then 7.

98    The letters were sent by the defendant, Attorney John Berman, on his firms letterhead, immediately after his client, the defendant, Paul Egan, had just entered the Family Violence Education Program under the terms of a Family Violence Protective Order, issued by the Criminal Court, in exchange for no jail, and his criminal record being wiped free in one year.

99.    The terms of the Family Violence Protective Order, were that the defendant, Paul Egan, have absolutely no contact at all with the plaintiff, Lisa Egan, or his children, child plaintiffs, Rachel Egan and Loyal Egan, until the disposition of the criminal case in one year, and until the defendant, Paul Egan,  and that he complete the court ordered Non-Violence therapy program which would take six months.

100..    Any violation of the terms was stated directly on the Family Violence Protective Order, to be a Criminal Violation..

101.    At the same point in time, there was a standing Criminal Protective Order, standing Civil Restraining Orders, and a mandate from the Department of Children and Family Services that there be absolutely no contact between the defendant, Paul Egan and his children, Rachel Egan, and Loyal Egan..

102.    The defendant, Attorney John Berman, as the defendant, Paul Egan's Attorney,  had full and complete knowledge of the existence of the Family Violence Protective Order, the Criminal Protective Order, the two Civil Restraining Orders, and the mandate from the Department of Children and Family Services, and completely understood from a professional

17

point of view that any visitation between the defendant, Paul Egan, and his children, plaintiffs, Rachel Egan and Loyal Egan, would be absolutely illegal and in direct violation of all the Court Orders averred, Orders issued to ensure the safety of the children, as well as their mother, who had already been victims of habitual violence, and who were entitled to the relief granted. them.

103..         The defendant, Paul Egan, having been a party to the Criminal Court Agreement, the Civil Restraining Orders, the Criminal Protective Orders, and the Department of Children and Family mandates, had full and complete knowledge that any visitation or contact was illegal, and that to make contact or force contact would be in violation of the statutes listed on the documents he had in his possession telling him so..

104.         The defendant, Attorney John Berman, and the defendant, Paul Egan, when committing that coercion and extortion through the letters written and sent to the plaintiff, Lisa Egan, in the summer of 1998, intentionally withheld funds from the plaintiff, Lisa Egan, when she refused to comply with their demands for the illegal visitation, funds they knew were necessary for the feeding and housing of the two child plaintiffs, Rachel Egan, and Loyal Egan,

105.         The funds were the only money coming into the household as the plaintiff, Lisa Egan, was unemployed, had been a stay at home mom for the length of the marriage, and at that time was completely uneducated and unskilled.

106         The defendant, Attorney John Berman, and defendant, Paul Egan, admitted in the letters that their purpose in withholding the support funds, was punitive retaliation for the plaintiff, Lisa Egan, refusing to allow the visitation to occur..

107         The defendant, Attorney John Berman attempted to facilitate his client, in the commission of a crime, which is not only violation of the Attorney Code of Ethics, but is in itself a criminal offence, and the subsequent extortion, and coercion committed, criminal

offenses also.

## COUNT TWO

108         The plaintiffs, incorporate items 1-107 into this Count of this Complaint
and further allege:.

109.        In August of 1998, when the plaintiff, Lisa Egan, attempted to hire an
attorney, one Emily Moscowitz, to represent her interests and protect the interests of her children,
Rachel and Loyal Egan, the defendant, Attorney John Berman, interfered with that attempt.

110.        On August 7, 1998, Attorney Emily Mosiccowitz filed her Appearance on
behalf of the plaintiff, Lisa Egan.

111.        Attorney Moscowitz had assured the plaintiff that the defendant, Attorney
John Berman's coercive letters, and numerous other attempts by Motion to circumvent the
standing Criminal Protective Orders,  Family Violence Protective Orders,  and Restraining
Orders, and mandate of Department of Children and Family Services would not succeed, as any
visitation was barred by the protection granted.

112.        Attorney Moscowitz immediately made a Motion to the Court for Attorney
Fees to be paid by the defendant, Paul Egan, and simultaneously another Motion reqesting that
the Restraining Orders be consolidated into the Divorce Case, and that the Restraining Orders be
extended.

113..       The night before the Hearing however,  Attorney Moscowitz phoned the
plaintiff, Lisa Egan at her home late in the evening,. and told the plaintiff, Lisa Egan, that the
next day she was going to lose on the visitation issue, and that the defendant, Paul Egan, would

get his visitation.

114.        When the plaintiff, Lisa Egan, asked how that could be, Attorney

Moscowitz would not explain.

115.        On August 19, 1998, the plaintiff, Lisa Egan, the defendant, Paul Egan,

and the defendant, Attorney John Berman, met at the Superior Court along with Attorney

Moscowitz.

116.        Prior to going into the Courtroom, the plaintiff, Lisa Egan, the defendant,

Paul Egan, the defendant, Attorney John Berman, and Attorney Moscowits sat in a conference

room to discuss the issue of Attorney Fees for Attorney Moscowitz, Extension of the Restraining

Orders, Consolidation of the Restraining Orders into the Divorce File, and the issue of

Visitation..

117.        The defendant, Attorney John Berman, and Attorney Emily Moscowitz,

agreed to a Visitation schedule, despite the existence of all of the Protective Orders averred

above, and then the defendant, Attorney John Berman agreed to have the defendant, Paul Egan,

pay a retainer to Attorney Moscowitz, writing it on a piece of paper, which then  slid across the

table to Attorney Moscowitz,  but still kept his hand on..

118.        The plaintiff, Lisa Egan, then tried to speak up and brought up the

Restraining Orders, and their possible Consolidation though she did not understand at the time

what that meant, only that it was in her interest to have them Consolidated according to what

Attorney Emily Moscowitz had told her previously..

119.        When Attorney Emily Moscowitz began to attempt to discuss the

possibility of the Restraining Order being Consolidated into the Divorce Case, the defendant,

Attorney John Berman, pulled the paper back across the table, and rescinded his offer to pay the

Attorney Fees, to which then Attorney Moscowtiz reached for the paper again, and said they could forget about the Restraining Orders, and keep things nice.

120.     The plaintiff, Lisa Egan, unaware at that time, that the visitations, though agreed to and arranged by the defendant, Attorney John Berman, and Attorney Emily Moscowitz, were still absolutely illegal, and believed she had no choice but to let the visitation take place as she was told to do so by her Attorney Emily Moscowitz..

121,     When the plaintiff, Lisa Egan, the defendant, Paul Egan, the defendant, Attorney John Berman, and Attorney Moscowitz stood moments later in front of the Honorable Judge  in Courtroom 300  to tell the Court that the parties had agreed to a Visitation schedule and weekly pendente lite Child Support,  neither attorney ever mentioned the existence of the the Restraining Orders, Criminal Protective Orders, Family Protective Orders, and Department of Children and Family Services Orders were never mentioned by the two Attorneys, and the visitation so ordered.

122.     At the second visitation, the defendant, Paul Egan, committed an aggressive physical act against the plaintiff in plain view in a public place and in the presence of the child plaintiff, Loyal Egan,  throwing mail in her face and hitting her in the face, the plaintiff went to see the Victims Advocate at the Criminal Court located on Lafayette Street in Hartford..

123.     The Victims Advocate explained that the visitations were illegal and that the plaintiff, Lisa Egan, and her children, Rachel Egan, and Loyal Egan, still had rights to their protection of all of their protective Orders under the law, and that the Restraining Orders should have been consolidated into the Divorce File to ensure the Courts knowledge of safety issues, particularly since their were children involved..

124.     The plaintiff, Lisa Egan, as a result of the information given to her by the

21

Victims Advocate, immediately discharged Attorney Emily Moscowitz from representing her, as she now knew that the defendant, Attorney John Berman, had deprived her of fair legal representation.

125.     The defendant, Attorney John Berman, by arranging and forcing visitation to take place in direct contravention to all of the Protective Orders averred in this Complaint, and arranging that visitation by the use of money as both a bribe and a method of extortion to achieve his end, had facilitated his client, in the commission of a violent act against the plaintiff..

126.     The plaintiff, Lisa Egan, suffered the harm of another physically aggressive act, and though not severe in nature, an act which was nonetheless unwanted and humiliating, and committed in the presence and full view of the child, Loyal Egan, who was then 7 years old, an act he had a right to be protected from witnessing..

127.     The defendant, Attorney John Berman, did not have the legal authority to circumvent Protective Orders, Restraining Orders, Family Violence Protective Orders, or mandates from the Department of Children and Family Services,.

128.     The defendant, Attorney John Berman, did not act with candor toward th Court on August 19, 1998, when he had a duty to disclose to the Court that there were standing Restraining and Protective Orders, and Mandates by Department of Children and Family Services, barring any visitation from taking place, and made no such disclosure.

.    129..     The defendant, Attorney John Berman, knowingly, deliberately, and intentionally put the plaintiff, Lisa Egan, and the child plaintiff, Loyal Egan, at risk of physical and emotional harm from his client, the defendant, Paul Egan, a man he knew to be dangerous to the plaintiffs, and who subsequently harmed the plaintiffs as a result of the defendant, Attorney John Berman's facilitation of the visitation.

## **COUNT THREE**

130.        The plaintiffs incorporaate the items averred in items 1 - 131 into this Count of this Complaint and further allege:

131.        The plaintiff, Lisa Egan, a pro se once more, filed her own Contempt Motion on the defendant, Paul Egan, for hitting her in the face outside Friendly's Restaurant in West Hartford, Connecticut, at the illegal visitation drop off point.

132.        The plaintiff, Lisa Egan, once again, continued to refuse to allow the defendant, Attorney John Berman, to force her to submit to any other visitations now that she understood she was still entitled to the protection of the Orders granted her, and so were her children, Rachel Egan and Loyal Egan.

133.        At the December Contempt Hearing, the Honorable Judge Sheridan Moore, told the defendant, Attorney John Berman, that the two visitations which had been had in August, were had in violation of the Civil Restraining Orders and Criminal Protective Orders..

134.        On January 8, 1999, the defendant, Attorney John Berman, used methods of coercion, extortion, and threats, to once again attempt to force the plaintiff, Lisa Egan, into allowing his client, the defendant, Paul Egan, to have illegal visitation with his son, child plaintiff, Loyal Egan.

135.        The defendant, Attorney John Berman, knew that the child plaintiff, Rachel Egan, then 13 years old, needed to have her Financial Aid forms completed in order to get her scholarship money for her tuition, so that she could attend private high school.

136.        The defendant, Attorney John Berman knew that the child plaintiff, Rachel Egan, though only in 8th grade, had scored one point off perfect on the SAT College Board exam

23

verbal section, receiving a score of 790, and a math score of 680, which put her eligible by score

for Harvard at only 13. As a result of that score and other talents, academic and otherwise, the

child plaintiff, Rachel Egan, who had also scored perfect scores on the Private School SSAT

entrance exams, was being offered a place at every private high school she applied to. The only

issue for the child plaintiff, was the tuition,

137    The defendant, Attorney John Berman knew that the plaintiff, Lisa Egan,

and child plaintiff, Rachel Egan, would not have the ability to satisfy the tuition unless the child

plaintiff, Rachel Egan, received Financial Aid, as the plaintiff, Lisa Egan, did not have the funds

to send her daughter to private school without financial aid, and most of the completive private

high schools have bylaws preventing Merit Scholarships, so all financial aid is need base...

138.    The defendant, Attorney John Berman, and the defendant Paul Egan, were

informed by the plaintiff, Lisa Egan, that a document known as the Parents Financial Statement,

known as PFS, had to be sent to a national organization in Princeton, New Jersey, an

organization that verifies the income of both parents because it is granted access to IRS files and

filings, and makes an unbiased determination of financial need which it then sends back to all

private high schools and all colleges to aid them in making determinations of grants, based purely

on financial need.

139.    The defendant, Attorney John Berman, and the defendant, Paul Egan,

knew that the Parents Financial Statement, PFS, needed to arrive in Princeton, New Jersey, by

the deadline of Friday, January 15, 1999, or the child plaintiff, Rachel Egan, would definitively

lose all opportunity to receive Financial Aid, and consequently be denied the chance to attend

private high school though she had academically earned her place.

140.    The defendant, Attorney John Berman and the defendant, Paul Egan, knew

24

that a portion of the PFS form had to be filled out by the defendant, Paul Egan, as his income and

assets were relevant to the determination of need, and that omission of his income or

misrepresentation of his income would result in the child plaintiff, Rachel Egan, being flatly

denied any financial aid at all..

141.    The defendant, Attorney John Berman, and the defendant, Paul Egan,

knew that it was mandatory that copies of the defendant, Pual Egan's W-2's and previous and

current 1040s be sent to Princeton and the private schools, as part of that application for aid.

142.    On Wednesday, January 6, 1998, the plaintiff, Lisa Egan spoke with the

defendant, Attorney John Berman, and reminded him that the child plaintiff, Rachel Egan,

needed her Financial Aid, and that the deadline for the PFS required documentation of income, or

she would be denied any financial aid..

143.    On Friday, January 8, 1999, the defendant, Attorney John Berman, had a

telephone conversation with the plaintiff, Lisa Egan, from the offices of his law firm to her home,

144.    The defendant, Attorney John Berman, during that telephone call on

January 8, 1999, employed  methods of coercion, extortion, and threats, to attempt to force the

plaintiff, Lisa Egan, into once again allowing his client, the defendant, Paul Egan, to have illegal

unsupervised visitation with his son, child plaintiff, Loyal Egan.

145.    The defendant, Attorney John Berman, refused to turn over the PFS form

and financial documentation, unless the plaintiff, Lisa Egan, agreed to allow his client, the

defendant, Paul Egan, to violate all of the protective orders and have visitation.

146.    The defendant, Attorney John Berman, expressly and explicitly told the

plaintiff, Lisa Egan,  that he wanted her to violate the protection of her own Civil Restraining

Orders, and her own Criminal Protective Orders.

25

146.       The defendant, Attorney John Berman, expressly and explicitly told the plaintiff, Lisa Egan, that he wanted her to have the child plaintiff, Loyal Egan, violate the protection of his Restraining Orders and Criminal Protective Orders also.

147.       The defendant, Attorney John Berman, expressly and explicitly told the plaintiff, Lisa Egan, that he wanted *her* to agree to allow him to vacate her Criminal Protective Orders, and to not contest that vacation, or show up for the  Hearing on the issue.

148.       The defendant, Attorney John Berman, expressly and explicitly told the plaintiff, Lisa Egan, that she and her children did not need the Criminal Protective Orders, as Civil Restraining Orders offered the same protection.

149.       The defendant, Attorney John Berman, expressly and explicitly told the plaintiff, Lisa Egan, that her interests would not be prejudiced by the vacation of her and her children's Criminal Protective Orders.

150.       The defendant, Attorney John Berman,.expressly and explicitly told the plaintiff, Lisa Egan, that most people don't get Criminal Protective Orders, but that they get Civil Restraining Orders instead , issued by the Superior Court not Criminal Court, and that those Civil Restraining Orders grant the same level of protection.

151.       The defendant, Attorney John Berman,  expressly and explicitly told the plaintiff, Lisa Egan, the Civil Restraining Orders, and Criminal Protective Orders are identical and carry the same penalties.

152.       The defendant, Attorney John Berman, expressly and explicity told the plaintiff, Lisa Egan, that he wanted her to violate all of the rules and terms listed on the Civil Restraing Orders, and Criminal Protective Orders until he could get them Modified or Vacated.

153.       The defendant, Attorney John Berman, expressly and explicitly admitted

26

to the plaintiff, Lisa Egan, that what he was asking her to do was in direct violation of the Criminal Protective Orders and Civil Restraining Orders, but that he wanted her to do it anyway.

154.    When the plaintiff, Lisa Egan, tried to say "no" and bring up the Financial Aid Form and deadlined income documentation, the defendant, Attorney John Berman, told the plaintiff, Lisa Egan, he was hanging up on her, that he wanted her to think it over, and to think about allowing him to vacate her Criminal Protecive Orders in trade for the Financial Aid Forms for the child plaintiff, Rachel Egan.

155.    On January 14, 1999, the plaintiff, Lisa Egan, went to the law office of the defendant, Attorney John Berman, to hand deliver a letter she had written the day before, which was dated January 13, 1999.

156.    The plaintiffs, January 13, 1999, letter spoke of the immediate need for the PFS financial form, and other related income documents, and of her clear intention to continue to disallow visitation to take place while all of the Orders stood..

157    When she arrived at the law office, she asked the defendant, Attporney John Berman, to personally sign for the document, and date his signature, which he did.

158    After the defendant, Attorney John Berman, signed for the letter, he asked the plaintiff to come into a conference room in the central part of the office, a room with two separate entrances leading out to the main corridor, of which both doors were wide open.

159    The defendant, Attorney John Berman, then employed methods of coercion, extortion, and threats to again force the plaintiff, Lisa Egan, to give in to his demands that she allow his client, the defendant, Paul Egan, to break the law and have

## THIS IS NOT COMPLETE

## THIS IS ONLY AN ATTACHMENT TO LETTER

27

## <u>CERTIFICATION</u>

This is to certify that a copy of the foregoing has been mailed this

day, February 10, 2004, to Attorney Kevin Majewski, of Robinson & Cole, at 280 Trumbull

Street, Hartford, CT  06103 - 3597, and Paul Egan, at P.O. Box 83, Centerbrook, CT. 06409.


Rachel Egan

Loyal Egan

Plaintiff Pro Se

Hadley Macpherson
P.O. Box 501
Lahaska, PA  18931
(215) 325 - 1001