Depositions.

      With no information having been gathered, it is difficult to see how they could have prepared any defense thus far, never mind have ruled out any connection to the other case of # 3:01cv01555.

      Finally, the defendants themselves in this case, full knowing the extant of their wrongs, and their inappropriate connection and activity with the defendants of the case of # 3:01cv01555, could not have expected that the cases would ever remain separate if those joint and conspiratorial acts were to ever come to light.

      If the defendants chose not to be honest with their attorneys, or <u>not to fully enlighten</u> their attorneys to those joint conspiratorial tortious acts so that their attorneys could prepare an adequate and complete defense, then that is the defendants own fault.

      If the defendants <u>did enlighten</u> their attorneys to the full nature of their acts, then Attorney Majewski, Attorney Wade, and Attorney Samuels, as fine attorneys, having full knowledge of the joint conspiratorial acts between the defendants in the two cases, could not ever have believed that preparing a defense on the unfounded assurance of Attorney Edward Sheehy that Consolidation would never take place, would be at all prudent.

      Therefore, under the facts listed above, the attorneys for the defendants in this case, as part of their duty to competently protect the interests of their clients, <u>would have had to have prepared a defense that anticipated consolidation</u>.

      If they chose not to out of a false hope, then the burden incurred to the defendants is of their making, and as such cannot be attributed to the plaintiffs and used to defeat Consolidation.

6.   **As to defendants averment # 13 on page 3 of their Opposition to Consolidation, the plaintiffs submit the following Affirmative Defense:**

The defendants attempt to use the following two issues to defeat and prejudice the plaintiffs request for Consolidation of the two cases:.

The defendants argue first, that the plaintiffs cannot now ask for Consolidation because the plaintiffs opposed Consolidation back on March 5, 2003, and that the plaintiffs requesting Consolidation now "at this stage of the litigation" is therefore illogical.

.    The defendants argue second, that that "Plaintiffs have not provided support for their claim that new facts have recently become known, which were apparently not available  through Plaintiffs' due diligence for the two-years since Plaintiff filed this lawsuit."

<u>As to the first issue -</u>

The plaintiffs contend first, that under the facts and circumstances enumerated below, the plaintiffs request for Consolidation at this stage of the litigation is <u>entirely logical</u>.

On January 29, 2003, Attorney Edward Sheehy, representing the defendant, Attorney Sally Hodgdon, in the case of Rachel Egan, Loyal Egan, and Hadley Macpherson Egan v. Attorney Sally Hodgdon, docket # 3:01cv01555,  filed a "Motion for Transfer and Consolidation", requesting that his case be consolidated with this case of # 3:02cv1309, and transferred from the District Court at Bridgeport up to the District Court at Hartford where this case was then being heard.

Attorney Edward Sheehy, in his "Motion for Transfer and Consolidation" argued that there were common issues of fact and law that allowed for the two cases to be consolidated.

In response, on March 5, 2003, the plaintiffs filed an "Opposition to Transfer and Consolidation" in that same case of # 3:01cv01555.

At the time that the plaintiffs made their "Motion in Opposition to Consolidation", the plaintiffs had <u>no sure, no definitive</u>, and <u>no distinct knowledge that the wrongs committed by the defendant, Attorney Sally Hodgdon, were concretely connected to the wrongs committed by the defendant, Attorney John Berman, and the defendant, Paul Egan</u>.

The plaintiffs, argued in their "Motion in Opposition Transfer and Consolidation"to the defendant, Attorney Sally Hodgdon's <u>request for Consolidation</u>, that though the defendants and plaintiffs of both this case # 3:02cv1309 and case # 3:01cv01555, were connected by common events surrounding a divorce action in Superior Court, <u>the actual allegations in the two separate cases were founded on distinctly separate facts which were singular to each individual case, and each defendant only</u>.

Further, the plaintiffs argued that the matters of law to be decided were <u>wholly different in the two cases</u>, and <u>had different elements to be proved</u>, as the defendant, Attorney Sally Hodgdon had been employed as a fiduciary to the child plaintiffs, Rachel Egan and Loyal Egan.

The plaintiffs also argued that not only would the complexities of the issues in the two cases be made unnecessarily difficult for a jury to sort out if the two cases were consolidated, but that it was in the best interest of the two children, as well as Hadley

34

Macpherson, if their contact with the defendant, Paul Egan, was limited to the case that concerned him only, that being this case of # 3:02cv1309, given the history of hostility and domestic violence in the family.

The plaintiffs, in their "Opposition to Transfer and Consolidation", also argued against the defendant Attorney Sally Hodgdon's request for Transfer to the District Court at Hartford, by stating that the plaintiffs intended to request the transfer of this case # 3:02cv1309 out of Hartford, as the defendant, Attorney John Berman, had been a state Congressional Representative in the Hartford area, and had also been a Probate Judge for the City of West Hartford for a great many years, which would have prejudiced the plaintiffs' ability to obtain a fair and impartial jury in the District Court at Hartford, should this case go to Trial.

The plaintiffs requested that if the cases must, or should, be Consolidated that they at least be transferred out of the District Court at Hartford for the reason stated above, and that the defendant, Attorney Sally Hodgdon therefore be denied her request for Transfer to the District Court at Hartford, in anticipation of Consolidation.

On March 7, 2003, this case was Transferred down to the District Court at Bridgeport, to the same judge who held # 3:01cv01555, in anticipation of Consolidation.

One year later, on June 2, 2004, the plaintiffs filed a "Motion for Stay of Process and Stay of Responses," due to the recent discovery of new information which had been deliberately and fraudulently concealed from the plaintiffs, and which now uncovered, evidenced that there was an inappropriate connection between the defendants in the two cases, and that the defendants had jointly conspired to commit, and jointly did commit, numerous of the tortious acts alleged in the two Amended Complaints filed on May 14,

35

2004, as well as other tortious acts that the plaintiffs had only now just become aware of.

Attorney William Wade, and Attorney David Samuels, representing the defendants in this case of # 3:02cv1309, as mentioned earlier in this Reply, <u>chose not to respond</u> to the plaintiffs "Motion for Stay of Process and Stay of Responses", though they had the opportunity to, <u>but remained silent in the face of that Motion, and silent as to the allegations contained in that Motion, which allegations were the basis for the plaintiffs' requests for a Stay so to enable them to file an Amended Complaint.</u>

In choosing not to file any Objection or Opposition to the plaintiffs Motion for Stay of Process and Stay of Responses, Attorney William Wade, and Attorney David Samuels, for the defendants in this case, <u>agreed to the plaintiffs request for a Stay of Responses and Stay of Process so as to allow the plaintiffs to file an Amended Complaint</u>

Further, in choosing not to respond, Attorney William Wade and Attorney David Samuel <u>agreed</u> with the plaintiffs requests for a Stay so as to file an Amended Complaint <u>on the plaintiffs stated basis of Fraudulent Non-Disclosure and Fraudulent Concealment,</u> as those were the <u>stated allegations supporting the plaintiff's request in the motion, which allegations were left completely uncontested by the defendants' silence.</u>

In doing so, the defendants not only admitted to those allegations of Fraudulent Non-Disclosure and Fraudulent Concealment, but <u>agreed to the plaintiffs filing of an Amended Complaint based on those allegations, without reservation, and without further challenge or investigation.</u>

Further, Attorney William Wade's and Attorney David Samuel's, <u>lack of denial</u> as to the existence of an inappropriate connection between the defendants in both cases, and

36

lack of denial that the defendants committed acts of Fraudulent Non-Disclosure and Fraudulent Concealment which had prevented the plaintiffs from knowing the full basis of their true cause of action against the defendants in both cases, was therefore a legal admission to the plaintiffs allegations that acts of fraudulent non-disclosure and fraudulent concealment had taken place which had prevented the plaintiffs from fully knowing the full basis of their true cause of action or their right to recovery against the defendants in  both cases.

That admission was confirmed by the fact that in the face of the plaintiffs allegations, Attorney Sheehy, for the defendant, Attorney Sally Hodgdon, in the case of #3:01cv01555 failed to the deny the allegations of Fraudulent Non-Disclosure, and Fraudulent Concealment as well.

On June 7, 2004, Attorney Edward Sheehy, for the defendant, Attorney Sally Hodgdon, filed an Objection to the plaintiffs' Motion for Stay of Process and Stay of Responses.

However, Attorney Edward Sheehy, in opposing the plaintiffs' Motion for Stay of Process and Stay of Responses, never made any attempt to deny the existence of an inappropriate connection between the defendants in the two separate cases, never made a any attempt to deny that  acts of Fraudulent Concealment and Fraudulent Non-Disclosure had been committed by the defendants in the two cases, and never made any attempt to deny that the defendants in the two cases had conspired to commit, and did jointly commit, numerous of the tortious acts against the plaintiffs in those cases, the conspiracy of which, and the fraudulent concealment of which, had prevented the plaintiffs from knowing until recently the full basis of their cause of action against all defendants in the

two cases.

Attorney Edward Sheehy's <u>lack of denial</u> as to the existence of an inappropriate connection between the defendants in both cases,  and <u>lack of denial</u> that the defendants had committed acts of Fraudulent Non-Disclosure and Fraudulent Concealment which had prevented the plaintiffs from knowing the full basis of their true cause of action against the defendants in both cases, was therefore <u>a legal admission to the plaintiffs</u> <u>allegations that the defendants had committed acts of Fraudulent Non-Disclosure and</u> <u>Fraudulent Concealment which had prevented the plaintiffs from fully knowing the full</u> <u>basis of their true cause of action or their right to recovery against the defendants in both</u> <u>cases.</u>

Further, Attorney Edward Sheehy, in objecting to the plaintiffs Motion for Stay of Responses and Stay of Process, <u>never addressed the issues of fraudulent non-disclosure,</u> <u>or fraudulent concealment in his Objection</u> at all, and being completely silent as to the allegations, <u>completely ignored the issues which were the basis of the plaintiffs request</u> for Motion for Stay of Process and Motion for Stay of Responses and request to file another Amended Complaint.

In doing so, Attorney Edward Sheehy, representing the defendant, Attorney Sally Hodgdon, <u>did not in fact properly oppose</u> the plaintiffs Motion for Stay of Process and S tay of Responses, as he did not contend the basis on which it was asked for..

Attorney Edward Sheehy, in his Objection to the Plaintiffs Motion or Stay of Process and Stay of Responses, <u>only</u> complained of the numerous extensions given to the plaintiffs previously, and attempted to use those requests for extension to now defeat the plaintiffs Motion for Stay of Process and Stay of Responses, and their ability to file

another Amended Complaint.

By completely ignoring the issues which were the stated basis of the plaintiffs request for their Motion for Stay of Process and Motion for Stay of Responses, the Attorney Edward Sheehy, and the defendants he represents in the case of # 3:01cv01555, not only permanently lost, or waived, their legal right to complain of or oppose the plaintiffs "Motion for Stay of Process and Motion for Stay of Responses" in the future, but also permanently lost, or waived, their right to oppose, or complain of, the basis on which the plaintiffs "Motion for Stay of Process and Stay of Responses" and request to file an Amended Complaint had been granted.

As the attorneys for the defendants in both this case # 3:02cv13209 and in case #3:01cv01555 failed to ever attempt to deny the allegations of Fraudulent Non-Disclosure and Fraudulent Concealment stated in the plaintiffs "Motion for Stay of Process and Stay of Responses", when they had the opportunity, the defendants therefore admitted through their silence that the basis for the plaintiffs' request to file an Amended Complaint was valid, and was validly premised on the conclusion that the defendants had acted in conspiratorial concert, a conspiratorial concert of action which would now require that the two cases be consolidated.

As a result, the defendants, through their silence, and admissions, have permanently lost their right to object to, complain of, or oppose, the plaintiffs request as to the filing of a Consolidated Amended Complaint based on those joint conspiratorial acts of Fraudulent Non-Disclosure and Fraudulent Concealment.

Therefore, the plaintiffs contend, that the defendants in this case, as well as the defendants in the case of # 3:01cv01555, have by their own acts and admissions,

permanently lost, or waived, their opportunity and right to complain of the "lack of support for their claim that new facts have recently become known, which were apparently not available through Plaintiffs' due diligence for the two-years since Plaintiff filed this lawsuit."

At this point in the litigation, in deciding the present issue of Consolidation, it matters not whether enough supporting facts were given as to the nature of the facts that have been discovered regarding the alleged joint conspiratorial Fraudulent Non-Discosure and Fraudulent concealment, and acts committed jointly which were not known of previously.

The defendants in both cases had the opportunity to challenge any lack of specificity, or supporting facts as to the joint Fraudulent Non-Disclosure, joint conspiratorial Fraudulent Concealment, and other joint tortious acts, back when the plaintiffs filed their "Motion for Stay of Process and Stay of Responses."

The defendants chose not to take that opportunity at that time, and in doing so lost and waived the opportunity to challenge the plaintiffs allegations, or investigate the plaintiffs allegations as they pertained to be able to file a new Amended Complaint, or a "Motion for Consolidation."

Though they retain the right to challenge and investigate the exact nature of those allegations once they are averred in a new Amended Complaint, they lost the right at present to attempt to prevent the plaintiffs from filing an Amended Complaint, or to file a consolidated Amended Complaint.

Further, in light of the defendants silence, and admissions, and in light of the defendants failure to challenge, at the outset, the allegations made in the plaintiffs

40

"Motion for Stay of Process and Stay of Responses", the defendants, having been caught

in a cheat, and not denied the cheat, should not be entitled to succeed in their opposition

to Consolidation, by arguing now that they were entitled to more information.

The defendants stated in their Opposition to Consolidation that -

> "Plaintiffs have not provided support for their claim that new facts
> have recently become known, which were apparently not available
> through the plaintiffs due diligence for the two-years since plaintiff filed
> this lawsuit."

The plaintiffs contend that it was only due to the advent of the increasing

capabilities of the Internet, that the plaintiffs was able to only recently obtain the

information which exposed the defendants Fraudulent acts.

Were it not for the recent technological advances in the Internet, the plaintiff

could have searched until she was blue, and never found what she was looking for, nor

even have known what to look for, or ask for, once the stage of Discovery actually began

in the case.

The defendants in this case of # 3:02cv1309, and the defendants in the case of

#3:01cv01555, are all attorneys, except for the defendant Paul Egan, who though not an

attorney, was being represented by the defendant Attorney John Berman..

That the defendants, as attorneys, have particular expertise in knowing how to

hide information, and that as attorneys they have particular power to keep it hidden,

incurs no prejudice to the plaintiffs as to the length of time it has taken to discover that

information,  but only speaks of the likelihood that any Fraud committed by these

particular defendants in these two particular cases, would take some outside force like the

internet to expose it, as due diligence alone would not likely succeed in that endeavor.

41

Further, the time in which it takes a victim to discover a Fraud committed them, does not prejudice the victim, as the nature of Fraud is that it induces reliance so that the victim never knows it occurred and so is not seeking to find it.

In this case, the defendants wish to argue that the plaintiffs should have discovered their bad acts sooner, and that since the plaintiffs didn't, the defendants should be afforded the opportunity to appear to have acted alone in the commission of their bad acts rather than as conspirators, and therefore appear more innocent to a jury.

There would be no justice in granting the defendants that opportunity, as to do so would not only reward them for the cleverness of their Fraud, but would burden the plaintiff by forcing them to litigate twice over, as well as prejudice their ability to convince a jury of the sum total of joint conspiratorial acts.

There is no favor granted to Fraud, allowed for in the Rules,  nor should there be.

Under the Federal Rules of Civil Procedure, Consolidation may be granted under the following Rule 42(a):

> "When actions involving a common question of law or fact are pending
> before the Court, it may order all the actions consolidated; and it may
> make such orders concerning proceedings therein as may tend to avoid
> unnecessary costs or delay."

Judicial Economy is a primary factor favoring consolidation [Johnson v. Celotex Corp., 899 F.2d 1281, 1284 (2d Cir), cert. Denied, 498 U. 920 (1990)], provided the risks of unfairness, prejudice, and confusion would not be outweighed by the savings of time and expense resulting from consolidation.

In this present situation now before the Court, the defendants in both this case # 3:02cv1309, and # 3:01cv01555 should not expect that under their resounding silence

as to the plaintiffs allegations of joint conspiratorial Fraudulent Non-Disclosure of an inappropriate relationship between the defendants in the two cases, joint conspiratorial Fraudulent Concealment of the full and true basis of the plaintiffs cause of action, and joint conspiratorial acts newly discovered, that the defendants have any right to keep the two cases separate when their silence admits that they had acted as joint tortfeasors.

Further, there is no logical reason to keep the two cases separate any more, as to do so would only force that virtually all of the issues will now have to be averred and litigated twice over, a re-litigating that will not only incur double the expense of subpoenaing every witness twice, and inconveniencing every witness twice, but which will result in an unnecessary financial burden being forced on the citizens who will sit the jury(s) in the two cases, as well as an unnecessary financial burden and inconvenience to the Court.

Attorney Sheehy, for the defendants in the case of # 3:01cv01555, agrees with the above argument, as he himself has chosen not to file any Objection or Opposition to the plaintiffs "Motion for Consolidation", and therefore has not moved from his previous desire to have his case consolidated with this case of # 3:02cv1309.

Further, in not filing any opposition to the plaintiffs "Motion for Consolidation", Attorney Edward Sheehy has not just agreed to Consolidation under the facts and circumstances of the case, but has also agreed to the plaintiffs filing of a "Motion for Consolidation" as well as the plaintiffs filing of a Consolidated Amended Complaint.

The argument can then be made that the defendants in the case of #3:01cv01555 had no problem with the plaintiffs filing a "Motion for Consolidation" on June 24, 2004, prior to filing a new Amended Complaint.

43

Under the above facts, Consolidation, in this instance, is not as the defendants contend, "illogical", but is the only course of action that makes any sense at all.

Consolidation, in this case, is the plaintiffs legal entitlement.

When acts of Fraudulent Non-disclosure and Fraudulent Concealment are committed by defendants in order to prevent plaintiffs from ever knowing the true and full basis of their cause of action, <u>plaintiffs have a legal right to re-file an Amended Complaint so as to include all tortuous acts now known of, against all defendants now known of,</u> with the statute of limitations now tolling from the date of the discovery of the information that was fraudulently non-disclosed and fraudulently concealed, else the defendants reap reward for their Fraud.

In this instance, any Amended Complaint in either case, in stating the new actions against both the defendants in this case of # 3:02cv1309 and the defendants in the case of # 3:01cv01555, would insist upon the cases being consolidated, else the plaintiff is being forced to bear the burden and expense of redundancy merely because the defendants in succeeded in duping the plaintiffs into believing they acted independently of each other.

7.   <u>As to defendants averment # 14 on page 4 of their Opposition to Consolidation, the plaintiffs submit the following Affirmative Defense:</u>

The defendants in this case attempt to use the fact that the plaintiffs have not filed their Amended Complaint within the time frame granted to them, to defeat and prejudice the plaintiffs ability to have the two cases Consolidated.

The plaintiffs contend that whether or not the plaintiffs filed their Amended

44

Complaint on time, or at all, has no legal bearing on the true issues that weigh as to whether Consolidation is beneficial to serve the needs of Judicial Economy and justice in these two cases of #3:02cv1309 and #3:01cv01555.

There are already enough common questions of fact in the two cases as to make it feasible for the two cases to be consolidated under Rule 42(a).

Further, as stated before, when acts of Fraudulent Non-disclosure and Fraudulent Concealment are committed by defendants in order to prevent plaintiffs from ever knowing the true and full basis of their cause of action, plaintiffs have a legal right to re-file an Amended Complaint so as to include all tortious acts now known of, against all defendants now known of, <u>with the statute of limitations now tolling from the date of the discovery of the information that was fraudulently non-disclosed and fraudulently concealed,</u> else the defendants reap reward for their Fraud.

The plaintiffs are entitled to re-file an Amended Complaint even now, as the statute of limitations has not run out from the date of discovery which was only late this spring of 2004. To deny them that chance would be to reward the defendants for their efforts to hide from the plaintiffs the true cause of action they were entitled to recover for.

However, even if as the defendants contend, the plaintiffs' failure to file their Amended Complaint did weigh as to Consolidation, the plaintiffs submit that they had valid reasons for missing the 10 day date imposed.

All attorneys and defendants in the two cases are fully aware from the Letter to the Court dated July 7, 2004, that the plaintiff Hadley Mapcherson was struck with a sight threatening condition.

The letter from Dr. Kristina Longshore, clearly outlined the nature of the plaintiffs

45

condition, the danger that she could lose her sight completely, the immediacy of treatment, and the prolonged visual incapacitation caused by the bacterial corneal infection.

The plaintiff, Hadley Macpherson, already had one unusable eye. The one functioning eye now had a corneal ulcer burrowing its way through the center of the eyeball. The eyeball itself was suffering from edema (swelling), which caused extreme blurriness and pain, and iritis (inflammation of the iris), which caused extreme sensitivity to light. The plaintiff was not able to see clearly or keep her eyes open without intense pain.

It is difficult therefore for the plaintiffs to understand how it is that the defendants in this case think the plaintiff, Hadley Macpherson, could have met the 10 day date, under that visual handicap, with no staff, and no other attorney, or funds to immediately hire an attorney, to take over for her.

Even if the plaintiffs had had the funds to hire an attorney, it would have taken them longer than ten days to find one, and much longer still for that attorney to become acquainted with both cases, and acquainted with the seven 3" thick notebooks worth of evidence in order to have been able to draft an accurate Amended Complaint, and in order for that attorney to have been able to sign his or her name to that Amended Complaint without violating Rule 11.

Further, the plaintiffs contend that if the delays in their action in this case of #3:02cv1309 and case # 3:01cv01555 were not just the result of visual incapacitation, but also were the result of legal and financial burdens imposed on them by illegal actions of the defendants, then the plaintiffs should not be prejudiced by that delay

46

The plaintiffs submit that since the plaintiffs filing of the July 7, 2004 Letter to the Court, the defendants in these two cases have once again used another court to unfairly cause financial hardship to the plaintiffs, and to unnecessarily burden the plaintiff, Hadley Macpherson, with litigation in both the Superior and Appellate Courts.

It is likely that this Court is unaware of those events, but those events and issues involve all plaintiffs and defendants in these two Federal cases, and have impacted the plaintiffs ability to timely litigate these Federal cases.

The facts surrounding the defendants actions, and the plaintiffs delay, are as follows:

As all parties and attorneys in this case are fully aware, the child plaintiff, Loyal Egan, is suffering from a disease known as Dystonia.  Dystonia causes involuntary muscle contractions throughout the entire body that progressively worsen and force the body to twist into permanent contortion.

As part of the Dystonia, Loyal Egan is also suffering from the added conditions of hyper-reflexia, clonus, and ataxia as well, conditions which involve not just the central nervous system in the brain, and all muscle groups throughout the body, but which evidence central nervous disturbance, and disease, in the spinal chord.

All of those conditions cause intense pain to the child plaintiff, Loyal Egan, and render him incapable of performing physical tasks to a normal degree.

The child plaintiff, Loyal Egan, is on a medication called  Carbidopa/levo, which he takes three times a day in an attempt to abate the involuntary contractions which occur throughout his body.  The arches of his feet, as of this spring, have deformed, and he no longer has the normal stretch or flexibility in his legs or his back.  His arms and

47

hands are now weaker than they should be, with his right arm, shoulder and hand significantly weaker than his left.

When the child plaintiff, Loyal Egan, reaches for an object, and a contraction occurs, he cannot lift that object whether it be a notebook or a toothbrush. On one occasion, he woke up one day, and his right hand was frozen in a sideways position, which remained in that incapacitated position for four days, completely unusable, and severely cramped. He has special accommodations at school so that he can type his work in the classroom instead of write, and he has a double set of books so that he does not have to carry all of them home at night.

The child plaintiff, Loyal Egan, is as of yet not on pain killers, as to dope him at this point in his childhood would cause him intellectual and academic losses, and a loss of joy in participating in life and interacting with others, so he withstands the pain instead. He is only 14.

The disease of Dystonia will eventually cripple the child plaintiff, Loyal Egan, before he reaches adulthood, and render all parts of his body unusable except his brain, though he will have difficulty communicating his thoughts, as the Dystonia will also take his ability to move his mouth and speak.

Dystonia is genetic. In all likelihood, the basketball head injury when Loyal was 9, exacerbated the disease already lurking. The child plaintiff, Rachel Egan, suffers from the same disease, but is on a different course, and it appears will suffer a slower progression which though causing her dysfunction to worsen with age, will not debilitate her completely. Neither she nor her brother will ever have children.

The above prognosis is without the added burden of the secondary central nervous

48

system diseases which often accompany the disease of Dystonia, and the existence of which, if proved over the next six months to a year, will also eventually take the child plaintiff, Loyal Egan's mind, and then his life.

The plaintiff, Hadley Macpherson, on June 11, 2004, was informed that a warmer climate would bring some relief to the child plaintiff, Loyal Egan's suffering. The plaintiffs, as a result of that information, immediately went down to North Carolina to look for a school for the child plaintiff, Loyal Egan, and to see about housing for an impending move, so that the child plaintiff, Loyal Egan, could be moved down there by the start of high school in September.

The plaintiff anticipated the funds to pay for the move to come from the money given back to her from the Appeal known as AC24175, an Appeal this Court is aware of, as the plaintiff filed for extensions to finish that Appellate Brief one year ago.

The plaintiff argued at the Appellate Court on March 25, 2004, and had every reason, in June, to believe that she would win her Appeal which was based on Due Process claims.

On June 23, 2004, the Appellate Court released its advance opinion on the appellate case of AC24175. (The opinion was formally printed on June 29, 2004.)

The Appellate Court ruled in favor of the plaintiff, Hadley Macpherson.

The Appellate Court, in its opinion, stated the following:

> "Because the April 2, 2003 Hearing was conducted in violation of the plaintiff's due process rights to be given adequate notice of the hearing and, accordingly, to be given an opportunity to be present and to be heard, to present evidence and to cross-examine witnesses against her, the orders issues at that hearing cannot stand. The judgment is reversed and the case is remanded with direction to vacate the orders issued by the court on April 2, 2003."

The plaintiff, Hadley Macpherson,  therefore waited for the Superior Court to follow that Order, and to vacate the Orders previously made, and return to her the money owed to her and her children.

However, when the plaintiff, Hadley Macpherson, having heard no word after many weeks, phoned the Superior Court, she was told that the chief justice there, Judge Gruendel, refused to do anything in the case of FA-98-0718615, and to take no action on the Appellate Court Order known as AC24175, refusing to issue any orders, or to hold a Hearing to formally make any orders though directed to by the Appellate Court.

The plaintiff, Hadley Macpherson, was then forced to make a Motion for Modification of Child Support, by which to force a Hearing at which the Superior Court would be compelled to vacate the two Orders from the April 2, 2003 Hearing, and consequently order the defendant, Paul Egan, to pay back the money owed to the plaintiff, Hadley Mapcherson, and the two children, Rachel Egan and Loyal Egan.

The plaintiff, Hadley Macpherson, was relying on that money, which she guessed was at the very least upwards of $4,000 to move herself and the child plaintiff, Loyal Egan, down to North Carolina in time for him to start the school she had enrolled him in.

The plaintiff served her Motion on the defendant, Paul Egan, and the parties went to a Hearing on that Motion, on August 4, 2004.

The plaintiff, Hadley Macpherson, appeared again pro se, and the defendant, Paul Egan, again appeared pro se without his Attorney John Berman.

However, once in the building, the defendant, Paul Egan, refused to turn over the financial documents that the plaintiff had subpoenaed of him until just before the Hearing

50

began at 3:00 pm., though both parties had been waiting in the courthouse since 9:00 am to go before the judge.

The plaintiff, Hadley Macpherson, and the defendant, Paul Egan then went before one Judge Presley at 3:00 pm., who after hearing that the plaintiff had only just been given the financial documents by which to determine the exact amount owed to her, decided that a two hour Hearing was going to be needed in order to adequately determine the amount owed from the vacating of the April 2, 2003 Orders, which money, Judge Presley stated, was to be calculated from the time that the April 2, 2003 Hearing had illegally taken place.

In the meantime however, Judge Presley ordered the defendant, Paul Egan, to make an initial payment of $900 to the plaintiff, Hadley Macpherson, for some of the money owed to the child plaintiff, Rachel Egan, since the Hearing to determine the full amount would be several weeks away, and the plaintiff stated that she needed the money sooner.

The new Hearing was scheduled for August 27, 2004, and was scheduled as an evidentiary Hearing, to be heard in front of Judge Presley.

The plaintiff, Hadley Macpherson, now in possession of the financial documents, had the assurance that she would be receiving more than  the $4,000 back to her that she had already anticipated,  and therefore sent the child plaintiff, Loyal Egan, down to North Carolina, to stay with family friends so that he could be there to start school on time on August 19th, believing that she would have her money in her hand after the August 27, 2004 Hearing by which to move their things down, pay for a rental, and join him.

However, on August 27, 2004, when the plaintiff, Hadley Macpherson, arrived at

the Superior Court in Hartford to go before Judge Presley, whose Hearing it was

scheduled with, she found that the same judge who had refused to vacate the Orders

before, had transferred the case to himself, though Judge Presley was in the courthouse,

and as of that morning still had the parties calendared for a private two hour Hearing.

The plaintiff, Hadley Macpherson, being disallowed from going before Judge

Presley, was forced to take her case before that same judge, Chief Justice of the Superior

Court at Hartford, Judge Herbert Gruendel.

At the Hearing, Judge Herbert Gruendel, instead of immediately Vacating the

Orders as instructed to by the Appellate Court, allowed the defendant Paul Egan to argue

why he shouldn't have to pay back the money owed to the plaintiff.

Judge Herbert Gruendel allowed the defendant, Paul Egan, to argue that the

plaintiff had no right to file an Appeal in the first place, and that it was Judge Antonio

Robaina's decision and right to Terminate the child plaintiff, Rachel Egan's Child

Support if he saw fit.

In defense, the plaintiff, Hadley Macpherson, tried to enter into evidence a copy of

her Appellate Brief into the record, to which Judge Herbert Gruendel refused to respond

to that request, or accept the Brief.

Judge Herbert Gruendel allowed the defendant, Paul Egan, to argue that he ought

not to have to pay the money back because he was denied all contact with his children.

In defense, the plaintiff, Hadley Macpherson, tried to explain to Judge Herbert

Gruendel, that the no contact was as a result of the child plaintiff, Rachel Egan, choosing

to maintain her own Restraining Order against her father since 1998, and the child

plaintiff, Loyal Egan, testifying that his father had thrown an ax, a hammer, and a boulder

52

at him, and refusing any further contact as a result of those acts committed against him.

Judge Herbert Gruendel allowed the defendant, Paul Egan, to argue that he shouldn't be made to pay back the money owed because the plaintiff, Hadley Macpherson, had been awarded the house at the time of the Divorce in June of 1999, and that she must therefore be hiding money from that award.

In defense, the plaintiff, Hadley Macpherson, argued that the house was awarded to her as a result of her proving fault against the defendant, Paul Egan, in the Divorce Trial, for acts of domestic violence he committed against her for the length of the marriage, and that she had been awarded the house to be free to either live in it, or sell it to live off the proceeds as rehabilitative funds.

Judge Herbert Gruendel allowed the defendant, Paul Egan, to complain of an insurance bill for $52,000.00, that he had seen regarding the child plaintiff, Loyal Egan, and yet a bill he did not have to in any way pay for as the defendant, Paul Egan, himself <u>is not being asked to pay, nor has ever been asked to pay, or made to pay, any money in the eight years since the parties separated, for either child's healthcare costs, except for the child plaintiff, Rachel Egan's braces.</u>

Upon the defendant, Paul Egan's complaint, the Court made no query as to what was wrong with the child plaintiff, Loyal Egan, and gave the plaintiff, Hadley Macpherson, no opportunity to explain.

Judge Herbert Gruendel allowed the defendant, Paul Egan, to argue with <u>no evidence or testimony offered or provided to support the argument at all,</u> that the plaintiff, Hadley Macpherson is illegally employed under the table, and is therefore defrauding the IRS.

53

When in defense, the plaintiff tried to offer a letter from Dr. Kristina Longshore, her opthomologist, into evidence, to verify her present eye condition, the defendant, Paul Egan, argued that the letterhead and letter written by Dr. Kristina Longshore, of which this Federal Court has seen the same, was a forgery and a fake.

When the plaintiff then offered to bring Dr. Kristina Longshore up from Pennsylvania to testify to the truthfulness of the letter, and its contents, if she could be given a Continuance, Judge Herbert Gruendel denied her the opportunity, and disallowed the medical letter from being entered into evidence.

Though the plaintiff, Hadley Macpherson, denied every allegation that day made by the defendant, Paul Egan, and made statements on the record that the defendants allegations were not only unsupported and untruthful, but were irrelevant to the intent and purpose of the Hearing, Judge Gruendel continued to allow the defendant to make his case for why he shouldn't pay the plaintiff, Hadley Macpherson back the money owed .

Judge Gruendel then left for a recess, to which upon the plaintiffs insistence, he took a copy of the plaintiffs Appellate Brief with him, though he still would not enter it into evidence even upon the plaintiffs multiple requests to do so.

When Judge Herbert Gruendel returned, he stated that he was going to refuse to give the plaintiff, Hadley Macpherson, back her money, and though formally vacating the Orders of April 2, 2003, he was going to allow the Child Support Order for Loyal Egan, made on April 2, 2003, to continue to stand for the past year and half.

Judge Herbert Gruendel stated that he differed in his opinion from the Appellate Court, and that in his opinion the plaintiff was estopped from getting back the money owed to her, and had been estopped from filing the Appeal itself in the first place.

54

The plaintiff, Hadley Macpherson, contends that for a Court state that they are Vacating an Order, and then at the same time state that they are allowing the Order to stand, is no Vacation of an Order at all, and that Judge Herbert Gruendel knows that.

At best, it is a Vacation in word, but not in deed, which in the final analysis equates to a sham.

It cannot be stated that an Order for Segregation is Vacated, and then in the same breath, that black children still aren't allowed to go to the white children's school.

Judge Herbert Gruendel, on August 27, 2004, defied the Appellate Court, and in doing so, denied the plaintiff, Hadley Macpherson, and the child plaintiff, Loyal Egan, their Due Process Procedural and Substantive Rights once again.

This was a Hearing to Vacate previously illegal orders.

That Vacation was not up for debate, and the return of the plaintiffs money was not up for debate

Further, Judge Herbert Gruendel did not stop at that violation.

Judge Herbert Gruendel went on to deny the child plaintiff, Loyal Egan, any portion of the defendant Paul Egan's Profit Sharing Income, which is annual, and has been received every year for the past fifteen years, and also any portion of the defendant, Paul Egan's Bonuses which are also received yearly.

Though the plaintiff, Hadley Macpherson, argued that the law as stated in the Child Support Guidelines of this state, under 46b - 215a, requires that the child plaintiff, Loyal Egan be given a share of that Profit Sharing Income and Bonus's, Judge Gruendel still refused to do so, though he stated no reason for the deviation from the criteria in the Child Support Guidelines, and though he sat and read the Child Support Guidelines right

55

there in the Hearing.

Under the Child Support Guidelines governed by 46b-215a, <u>if a Court makes a</u> <u>ruling</u> <u>denying any of the legal entitlements stated within the Guidelines,</u> <u>without stating a</u> <u>reason for deviation,</u> <u>that ruling cannot stand, is not legal, and can be overturned.</u>

When the plaintiff, Hadley Macpherson, told Judge Herbert Gruendel that she would be Appealing his refusal to award the Profit Sharing, he then issued further Findings.

Judge Herbert Gruendel stated that he found the plaintiff, Hadley Macpherson, guilty of Misrepresentation of her income, though she has no income except her Child Support and Alimony.

When the plaintiff, Hadley Macpherson, asked Judge Herbert Gruendel what he was referring to, as she had no income, and could not have misrepresented any income anywhere, Judge Herbert Grendel would not tell her what he was referring to, but only said "Its in the file", the file being 10 inches thick, and encompassing four folders, which was sitting on his desk.

When the plaintiff, Hadley Macpherson, asked Judge Herbert Gruendel, to please tell her, and allow her to see what it was he was referring to because she was innocent, and had no idea what he was talking about, and needed that she needed to defend herself, he still would not tell her, but just kept saying "It's in the file."

When the plaintiff, Hadley Macpherson, told Judge Herbert Gruendel, that he must, under the law, tell her what he was referring to because she had a legal right to defend herself against such an accusation, he still refused to tell her anything but that it was "in the file".

56

When the plaintiff, Hadley Macpherson, told the judge that she was going to Appeal the Finding of Misrepresentation as she did not commit any Misrepresentation, and had a right to defend herself, Judge Herbert Gruendel then told the plaintiff what document he was referring to, but still refused to let her see it though she asked him repeatedly over and over again to see that document, and to be given the chance to defend herself in the Hearing.

After that, Judge Gruendel stated that he was going to make another Finding as to these Federal Cases now before this Federal Court, a Finding barring the plaintiff, Hadley Macpherson, from continuing in these Federal Cases, to which once he began to speak, the plaintiff, Hadley Macpherson interrupted him from speaking, and informed him that he had <u>absolutely no jurisdiction in these Federal cases</u> by which to render any Finding.

After Judge Herbert Gruendel argued that he did have the right to interpose himself into the Federal issues, the plaintiff argued that this case was filed nearly a year before the April 2, 2003 Robaina Hearing, and so had nothing to do with the issues and events that Judge Herbert Grendel was supposed to be addressing there in Superior Court on August 27, 2004.

At that point, Judge Herbert Gruendel retracted his words as to making any Finding in these Federal cases of # 3:02cv1309 and # 3:01cv01555.

During that Hearing on August 27, 2004, Judge Herbert Gruendel ended the Hearing by stating that it was unlikely that any judge in the Superior Courthouse at Hartford would have ever given the plaintiff, Hadley Macpherson, any chance to be heard back in the spring of 2003, even if she had come back in on a Motion to Reopen or Motion to Reconsider after the April 2, 2003 Robaina Hearing.

That statement was a direct admission to a bias held and perpetuated against the plaintiff, Hadley Mapcherson, by certain judges of the Superior Court in Hartford, a bias, and a prejudicial burden borne by the plaintiff, Hadley Macpherson, and her children, which is absolutely illegal, yet which they are absolutely helpless to defend against, given sovereign immunity.

Judge Herbert Gruendel, at the close of the Hearing on August 27, 2004, told the defendant Paul Egan, to write a check for only $115 to the plaintiff, Hadley Macpherson.

On August 27, 2004, the plaintiff, Hadley Macpherson, left the Superior Courthouse in Hartford, without her legally entitled back Child Support, without the correct amount of current Child Support, and without her money to move to North Carolina, where the child plaintiff, Loyal Egan, had just started school only one week before, and was waiting for her.

That money, and the correct amount of Child Support goes to meet the medical needs, and welfare of the child plaintiff, Loyal Egan, in these Federal Cases.

The plaintiff, Hadley Macpherson, after speaking with the Clerk's Office at the Appellate Court, has now had to file another Appeal with the Appellate Court in order to reverse the Orders issued by Judge Gruendel, Orders which a) denied the plaintiff her money entitled to her by the ruling of the Appellate Court, b) allowed the Child Support order of April 2, 2003, to stand for a year and a half despite the Appellate Court Order that it be vacated, c) denied the child plaintiff, Loyal Egan, any portion of his father's Profit Sharing or Bonus Income in defiance of the Child Support Guidelines governed by 46b-215a, and d) found the plaintiff, Hadley Macpherson, guilty of Misrepresentation without giving her any opportunity to defend herself, examine the document used against

58

her, or even be heard.

The plaintiff has knowledge that the actions of Judge Herbert Gruendel are tied in with the defendants and cause of action in both this case of # 3:02cv1309 and the case of #3:01cv01555.  That information as to the involvement of certain judges at the Superior Court with the defendants in these cases, is alleged with specificity in the plaintiffs Consolidated Amended Complaint.

.The plaintiffs will not be filing an Extension of Time in these two Federal cases by which to gain time to work on their Appellate Brief due in the Appellate Court.  The plaintiff, Hadley Macpherson, will meet her deadline without asking any favor.

However, if the defendants actions have forced the plaintiff, Hadley Macpherson, to now have to bear the burden of litigating once more in the Appellate Court in order to obtain her and her children's  legal entitlements under the law, as well to clear her own good name from an illegal Finding of Misrepresentation, they should not gain advantage in these cases by having created that burden.

Lastly, the plaintiffs admit that the defendants in this case, and in the case of #3:01cv01555, have been accommodating in not opposing the Extensions of Time that were requested by the plaintiffs over the past year.

However, while the plaintiff, Hadley Macpherson, understands that the defendants in these two cases are uncomfortable with being sued, and are entitled to resolve the issues at hand as quickly as possible, the resolving of those issues has not been in any way  prejudiced by the extensions of time granted to the plaintiffs.

The defendants in this case, and in the case of # 3:01cv01555, have suffered no extra or redundant expense by the extensions of time that were granted, as neither of the

firms representing them have performed any discovery as of yet, issued any Interrogatories, served any Requests for Admission, or held any Depositions.

If any actual paper work has been generated over these cases other than the four Motions filed by the defendants, referred to earlier, the plaintiff, Hadley Macpherson, has no knowledge of that fact.

For the defendants to suddenly now oppose Consolidation on the basis of those previous Extensions of Time, is not an opposition genuinely based on the defendants perception of unfair grace meted out to the plaintiffs.  The defendants are merely attempting to thwart the plaintiffs ability to file on issues only now just learned of as a result of their adeptness at Fraud.

The defendants could not logically believe that to ask an attorney with no partners to meet a 10 day deadline when they are virtually blinded by an ulcer in the center of their only working eye, is a fair demand in any court.

Under the defendants argument, if someone is victim to several tragic circumstances and events at one time, then they are less deserving of grace, or fairness, than if they had suffered only one tragic event.

Under that argument, an individual is only entitled to Fairness if the tragedy is small, and if the tragedy is greater, the victim should be cut off from Fairness.

The plaintiffs do not have the same definition of Fairness.

Society does not have the same definition of Fairness.

What is fair is not determined by the number of harms that befall a person, or a party in a case.  Fair is determined by what is humane under those harms or circumstances.

60

Whether a house in Florida is hit by one hurricane or three, makes the family no less deserving of the money due them from their insurance protection. Whether a person has one violent Criminal act committed against them, or five, makes that person no less deserving of justice for all five.

This life is not controllable. Each man is given what he is given, and not what he asks for.

The child plaintiffs in these two cases did not ask for Dystonia, and the plaintiff, Hadley Macpherson, did not ask to be almost blinded at the risk of being unable to care for her child, Loyal Egan.

Should the defendants, or the attorneys for the defendants, ever find themselves suffering a similar level of tragedy and grief as the plaintiffs have been suffering over the past year, the plaintiff, Hadley Macpherson, states for the record, that she will not oppose any requests for extensions of time that should be asked for.

Should the defendants, or the attorneys for the defendants, ever find themselves walking in the plaintiff, Hadley Macpherson's shoes, she will sit down, and she will wait for them to catch up, whether that wait be a month long, a year long, or two years long, because waiting is humane.

The defendants in these two cases are all attorneys save one, and as attorneys, may well see these cases as nothing more than paper exchanged between entities.

However, the plaintiff, who is not an attorney, chooses to hold on to her humanity, whether that be to her detriment or not, and will afford the defendants the full measure of grace, and time, they should ever need as human beings.

Rather than complaining of the loss of time, the plaintiffs contend that the

61

defendants should go home, go home and kiss their children, and their grandchildren, and then say to themselves There but for the grace of God go me and mine.

As for present status and whereabouts of the plaintiffs -

Five weeks ago, though having left everything he knows, and having moved eleven hours and six states away, North to South, living in a strange house without his family, and waiting for the plaintiff to join him, the child plaintiff, Loyal Egan, started traditional school for the first time in his life, has managed to get all A's on the upwards of twenty or so tests and quizzes given to him, has joined twelve clubs and run for President in four of them, applied to sit as a member of the North Carolina Congressional Youth Advisory Council and was one of the few freshman in the state of North Carolina chosen by Congress to sit that council, and finally, has managed to ask a pretty young girl to the Homecoming Dance, who said yes.

Despite the physical forces working against him, and the efforts of the defendants, the child plaintiff, Loyal Egan, is just fine. The plaintiff, Hadley Macpherson, will be joining him in North Carolina next week.

Should the defendants be hoping that the plaintiffs have lost their resolve to pursue these cases under the weight of the power wielded against them, that hope should be abandoned.


Rachel Egan

Loyal Egan


Respectfully Submitted,


Hadley Macpherson

62

# **CERTIFICATION**

This is to certify that a copy of the foregoing has been mailed this

day, September 23, 2004, to Attorney Jim Wade, of Robinson & Cole, at 280 Trumbull

Street, Hartford, CT  06103 - 3597, and Paul Egan, at P.O. Box 83,Centerbrook, CT.

06409.


Rachel Egan

Loyal Egan

Plaintiff Pro Se

Hadley Macpherson
P.O. Box 501
Lahaska, PA   18931
(215) 325 - 1001