## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| HADLEY MACPHERSON (EGAN), RACHEL EGAN, and LOYAL EGAN, Plaintiffs,<br><br>v.<br><br>JOHN BERMAN, BERMAN, BOURNS & CURRIE, LLC, BERMAN, BOURNS, AARON & DEMBO, LLC, and PAUL EGAN, Defendants. | CIVIL ACTION NO. 3:02cv1309 (SRU) |

### RULING ON REQUEST TO FILE AMENDED COMPLAINT LATE AS TIMELY

This case is, in essence, a case raising claims of tortious conduct in connection with child custody proceedings. Plaintiffs filed their original complaint in July 2002.[1] Since then, plaintiffs have filed and attempted to file various amended complaints. At oral argument on January 18, 2006, I granted defendants' motions to dismiss the amended complaint and ordered plaintiffs to file a new amended complaint, not to exceed 25 pages, no later than February 10, 2006. As of May 16, 2006, plaintiffs have not filed an amended complaint, but have written me a letter requesting that I allow them to file the amended complaint late, but as timely. Defendants have objected to that letter, requesting that I not allow plaintiffs to file the amended complaint late. Although defendants have not filed motions to dismiss, their objections have the practical effect of asking me to dismiss the case pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. For the reasons that follow, I conclude that dismissal is appropriate.

---

[1] There is another case pending before me with the same plaintiffs and similar procedural issues. I have addressed that case, *Macpherson, et al. v. Hodgedon, et al.*, 3:01cv1555 (SRU), in a separate opinion.

I.    **Procedural History**

The following procedural history is pertinent.

In July 2002, plaintiffs filed a complaint against Paul Egan, John Berman, and Berman's law firm, alleging conspiracy to commit various forms of tortious conduct related to divorce and custody proceedings between Macpherson and Egan. On January 28, 2003, defendants filed a motion to dismiss (doc. # 8). Between February 2003 and May 2004, plaintiffs filed 14 motions for extension of time primarily to respond to the motion to dismiss, almost all of which I granted, resulting in over one year of additional time for plaintiffs to respond to defendants' motion to dismiss. Still, plaintiffs never responded to the motion to dismiss. Rather, the motion to dismiss became moot when plaintiffs filed a 71-page amended complaint on May 14, 2004 (doc. # 44).

Plaintiffs then attempted to file a second amended complaint. On June 17, 2004, I granted plaintiffs' request for additional time to file a second amended complaint, but I warned plaintiffs that, "Further extensions of time to file an Amended Complaint are unlikely to be granted." *See* Docket Number 49. On September 30, 2004, I also warned the plaintiffs that "the pendency of objections to other motions does not preclude plaintiffs from filing a motion for leave to amend complaint." *See* Docket Number 58. Once again, on February 17, 2005, I instructed plaintiffs by written order that if they intended to file a second amended complaint it must be filed by March 10, 2005, "or it will be barred." *See* Order (doc. # 60) at 1. I set deadlines for discovery, disclosure of expert witnesses, and the filing of dispositive motions, and indicated that those deadlines "will be extended only for exceptional cause." *See id.* Plaintiffs did not comply with those deadlines.

On March 15, 2005, plaintiffs filed a second amended complaint (doc. # 64), which was

270 pages and 1545 paragraphs long.  Even though I had not granted plaintiffs' motion to consolidate this case with *Macpherson, et al. v. Hodgedon, et al.*, 3:01cv1555 (SRU), the plaintiffs treated the complaint as a consolidated complaint.

On January 18, 2006, I held a hearing to address all pending motions in this case.  I granted plaintiffs leave to file a new amended complaint by February 10, 2006.  Plaintiffs did not do so, and instead filed a letter requesting permission to file the complaint late, but as timely, and filed a motion to consolidate.  Defendants filed objections to plaintiffs' request to file a new amended complaint late but as timely.  *See* Docket Numbers 81 and 84.  On May 2, 2006, I held a hearing to address defendants' objections to plaintiffs' requests to file an amended complaint late, but as timely.  Although there is no motion to dismiss pending, defendants' objections to plaintiffs' request to file the amended complaint late serve, for all practical purposes, as motions to dismiss pursuant to Rule 41(b).

Throughout this case, plaintiffs have filed 22 motions for extension of time, and I have granted almost all of them.  *See, e.g.*, Docket Numbers 10, 11, 13, 14, 15, 16, 17, 18, 23, 26, 28, 30, 33, 35, 48, 52, 61, 68, 78, 86, 92, 96.  The plaintiffs have filed three motions to consolidate.  *See* Docket Numbers 50, 63, and 77.

## II.     Discussion

Over the past 3 3/4 years, I have made every effort to reach the merits of the pro se plaintiffs' case and have given them substantial leniency in complying with court-ordered deadlines.  In determining whether dismissal is appropriate in this case, I have weighed each of the five factors delineated by the Second Circuit.  Every factor weighs in favor of dismissal.  After thoroughly considering each factor and having explained my concerns to the plaintiffs on

multiple occasions, I conclude that dismissal is appropriate.

      A.    <u>Legal Standard</u>

Rule 41(b) of the Federal Rules of Civil Procedure provides, "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant."  A district court has discretion to determine if a matter should be dismissed pursuant to Rule 41(b) for failure to comply with a court order.  *Alvarez v. Simmons Market Research Bureau, Inc.*, 839 F.2d 930, 932 (2d Cir. 1988) (citing *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633 (1962); *Harding v. Federal Reserve Bank of New York*, 707 F.2d 46, 50 (2d Cir.1983)).  Dismissal with prejudice is "a harsh remedy to be utilized only in extreme situations."  *Theilmann v. Rutland Hospital, Inc.*, 455 F.2d 853, 855 (2d Cir. 1972).  Courts should be hesitant to dismiss a case for procedural deficiencies when the plaintiff is a pro se litigant.  *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996).  Nevertheless, "the power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts."  *Link*, 370 U.S. at 629-30.

The Second Circuit has delineated a five-factor test to determine whether dismissal is appropriate under Rule 41(b).  Considering the record as a whole, the court should consider: (1) the duration of the plaintiff's failures; (2) whether the plaintiff received notice that further delays would result in dismissal; (3) whether the defendant is likely to be prejudiced by further delay; (4) whether the judge has taken care to strike a balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard; and (5) whether the judge has adequately assessed the efficacy of lesser sanctions.  *Valentin v. Dinkins*,

121 F.3d 72, 76 (2d Cir. 1997); *Alvarez*, 839 F.2d at 932 (citing *Harding,* 707 F.2d at 50).

> B.     Application of Five-Factor Involuntary Dismissal Test

Applying those five factors to the facts of this case, I conclude that dismissal is appropriate.

> 1.     *Duration of Plaintiffs' Failures*

There are two components to this factor:  (1) whether the failures are attributable to the plaintiff, and (2) whether the failures were of significant duration.  *See Spencer v. Doe*, 139 F.3d 107, 113 (2d Cir. 1998).  Here, the failures are attributable to plaintiffs and have been significant.

This case is more than 3 3/4 years old, yet there is no operative complaint and there has been little or no discovery conducted.   The delay has been caused primarily by plaintiffs' repeated motions for extensions of time and failure to comply with court-ordered deadlines. Plaintiffs have filed 22 motions for extension of time, and I have granted almost all of them.  *See, e.g.*, Docket Numbers 10, 11, 13, 14, 15, 16, 17, 18, 23, 26, 28, 30, 33, 35, 48, 52, 61, 68, 78, 86, 92, 96.  Based on a review of the docket sheet, it is difficult to quantify the duration of those delays.

Considering only the issue of filing an amended complaint, however, plaintiffs have received over two years of additional time.  Plaintiffs filed the original complaint in July 2002. Since at least May 2004, plaintiffs have attempted to file a further amended complaint.  *See* Docket Number 44.  Plaintiffs filed an amended complaint in May 2004 (doc. # 44), and then immediately followed it with a motion to stay defendants' response to the amended complaint (doc. # 45).  I granted the motion, giving plaintiffs another opportunity to file another amended complaint.  *See* Docket Number 49.  Plaintiffs filed a second amended complaint on March 15,

2005 (doc. # 64), but that complaint did not comply with the Federal Rules of Civil Procedure,[2] and I granted plaintiffs a final extension of time to February 10, 2006 to file a new amended complaint.  January 18, 2006 Transcript (doc. # 76) ("Jan. 18, 2006 Transcript") at 67-68. Plaintiffs did not file a new amended complaint by February 10, 2006.  A workable amended complaint is now at least two years late.

At the May 2, 2006 oral argument, Macpherson suggested that defendants contributed to the length of the delay in this case.  A review of the docket sheet indicates otherwise.  This is not a situation in which the defendants have attempted to delay the case in order to wear down the plaintiffs; rather, the defendants in this case have objected to extensions of time and have attempted to dispose of this case promptly.  Defendants filed a motion to dismiss plaintiffs' original complaint in January 2003 (doc. # 8).  Plaintiffs filed 14 motions for additional time to respond to that complaint.  As a result of those time extensions, the case was delayed for over a year.  Ultimately, plaintiffs never responded to the motion to dismiss, and instead filed an amended complaint in May 2004.  Additionally, defendants have filed very few motions for extension of time.

Because the plaintiffs are primarily responsible for the delay, and the delay has spanned several years, this factor weighs in favor of dismissal.

2.     *Whether Plaintiffs Received Notice That Further Delays Would Result in Dismissal*

I have given plaintiffs extensive notice that I would not grant further extensions of time,

---

[2] The March 15, 2005 complaint was 270 pages long and contained 1545 paragraphs.  In addition, plaintiffs treated it as a consolidated complaint to apply in both cases, but I had not consolidated the cases, and plaintiffs did not request or receive permission to consolidate the complaints.

and further delays would result in dismissal.  On June 17, 2004, I ordered that "further extensions of time to file an Amended Complaint are unlikely to be granted."  *See* Docket Number 49.  On September 30, 2004, I noted that "The pendency of objections to other motions does not preclude plaintiffs from filing a motion for leave to amend complaint."  *See* Docket Number 58.  On February 17, 2005, I issued a written order, instructing plaintiffs that any amended complaint they wished to file must be filed by March 10, 2005, "or it will be barred."  *See* Order (doc. # 60) at 1.  Plaintiffs filed their second amended complaint on March 15, 2005 (doc. # 64), which was stricken at the January 18, 2006 hearing.

On January 18, 2006, I told plaintiffs that "this is going to be the last complaint."  *See* Jan. 18, 2006 Transcript at 68.  I indicated that I did not intend to grant additional extensions of time to file an amended complaint.  *See id.* at 69.  I ordered:

> The plaintiff will be permitted to re-file – and this is the very, very, very last time this will happen, we are way past the point of reason here – one complaint in each of these actions, a maximum of 25 pages [setting] forth a short and plain statement of the claims against each of the defendants who have already been served in those cases.

*Id.* at 67-68.  I explained, "It has to be filed, meaning it has to be in court on the 10th and you have to serve it, i.e. mail it the day you file it."  *Id.* at 70.

At the May 2, 2006 hearing, Macpherson argued that neither she nor I could have anticipated the weather and courier-related problems she experienced.  In fact, I had anticipated possible delays when I warned Macpherson at the January 18, 2006 hearing that "these complaints have to be filed by February 10, 2006.  I do not intend to grant any extensions of time.  If you expect to have any problem, get them in early."  *Id.* at 69.  Furthermore, the weather and courier-related problems are largely irrelevant; the point is not that plaintiffs filed a new

amended complaint late, but that they did not file it at all.

The record as a whole is replete with examples where I gave plaintiffs additional opportunities to comply with my orders. I have given plaintiffs many notices that failure to comply with court orders would result in dismissal, and plaintiffs have still not complied with my orders. Therefore, this factor weighs in favor of dismissal.

3.    *Whether Defendants Are Likely to be Prejudiced by Further Delay*

Additionally, the defendants are likely to be prejudiced by further delay. Defendants have defended this action for years. They have incurred costs, and will continue to incur costs associated with that defense. *See* Jan.18, 2006 Transcript at 55. After almost four years, there is not even a viable complaint against the defendants. Defendants will continue to be prejudiced if this case were to go to trial. Witnesses' memories have surely faded, and potential exhibits will be more difficult to find. Those concerns are amplified in this case, because the parties have not conducted discovery, due to plaintiffs' requests for extensions of time.

At the January 18, 2006 hearing, defense counsel argued that I should consider the defendants' due process rights in this case:

> Now, I understand that the district court relaxes rules of procedure vis-a-vis pro se defendants or plaintiffs, but there comes a point in time when the court has to be concerned with our procedural due process rights, because the rules that the court set up are intended to establish what the limits of due process are for both sides of the case. And so if someone comes to court and claims they are not getting due process, you look to the rules and say, well, here are the rules, follow them. In this case the rules are not being followed.

Jan. 18, 2006 Transcript at 52. Defense counsel continued:

> And we respectfully suggest that you've got to start saying are the due process rights of the defendants being violated here . . . And so to the extent that we have some rights here, it's you who ha[s] to say to the parties I've got

to look out for your rights as well as the plaintiff's rights.

*Id.* at 53.  I indicated that I was sensitive to the fact that defendants also have due process rights and that fairness demands that the plaintiffs very quickly file a workable complaint that complies with the Federal Rules of Civil Procedure.  *Id.* at 55, 69.  Although plaintiffs were aware of my concern for the defendants' due process rights, they did not file the amended complaint.

Even if plaintiffs experienced difficulties getting their new amended complaint to court on February 10, 2006 due to problems with the weather and their courier, if they had filed the complaint late on February 10th or the next weekday, the defendants would have at least been on notice of the claims against them.  Even though the defendants would have likely filed motions to dismiss the complaint for being late, it would have been difficult for them to argue that they had been prejudiced by one day's delay.  Now it is three months later and plaintiffs have still not filed a complaint.  Three months in and of itself might not be prejudicial, but in this case, I must add that three months' delay to the two years of extensions that plaintiffs have already received.

Although each delay taken in isolation might not have prejudiced defendants, considered cumulatively, the defendants have been and will likely continue to be prejudiced.  Therefore, this factor weighs in favor of dismissal.

4.      *Whether the Judge Has Attempted to Strike a Balance Between the Plaintiffs' Due Process Rights and Alleviating Court Calendar Congestion*

I have attempted to give plaintiffs a fair chance to be heard and to protect their due process rights with little or no concern for court congestion.  The Second Circuit has held, "There must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court."  *Lucas v. Miles*, 84 F.3d 532, 535-36 (2d

Cir. 1996). Court congestion includes tedious, vexatious, or burdensome litigation. *See id.* The record demonstrates that this case has had an extreme effect on court congestion. I have repeatedly overlooked that congestion, however, in my attempt to protect the plaintiffs' due process rights and have long struck the balance in plaintiffs' favor. Despite my attempts to protect the plaintiffs' due process rights, we are almost four years into the litigation and do not have an operative complaint. My repeated attempts to protect the plaintiffs' due process rights balanced against the extreme effect on court congestion weighs in favor of dismissal.

> a.    Pro Bono Counsel

I obtained extremely competent pro bono counsel for plaintiffs and urged them to accept that counsel on numerous occasions. *See, e.g.*, Jan. 18, 2006 Transcript at 47-50. At the January 18, 2006 hearing, I told Macpherson:

> [L]et me just really urge you to speak with [the counsel I obtained for you] again and consider retaining her to represent all three plaintiffs, because she's a very fine lawyer. She's a former judge and she's very experienced . . . so if you have a valid claim here, you ought to be represented by counsel and it's going to make this case go faster and smoother and you're going to have a better chance of success . . . and I really, really strongly would counsel you to have her represent you.

*Id.* at 48-49. Macpherson responded that she had spoken to the lawyer I obtained for her and that the lawyer had been willing to represent Macpherson. *Id.* at 48. Nevertheless, Macpherson told me that she did not want that lawyer to represent her, because "I have a benefit because of certain things that I know and I would like not to lose that benefit and in a way against my ignorance or ineptness in this room, there is a benefit I have by standing pro se for myself." *Id.* at 48.

The record shows that I have reminded plaintiffs that obtaining counsel would prevent some of the difficulties they have had in filing documents with the court. *See, e.g.*, Docket

Number 62 (reminding plaintiffs that "the difficulties they have experienced in filing pleadings could largely be avoided by obtaining counsel to represent them."). I urged plaintiffs to obtain counsel, because "a lawyer would have no problem complying with the [January 18, 2006] order and getting a complaint filed that meets this order. And whether or not you get a lawyer, you need to follow the rules." *See* Jan. 18, 2006 Transcript at 73.

b.    Extensions of Time

I have granted at least 13 motions for extension of time filed by plaintiffs, including several very substantial motions for extension of time with respect to filing amended complaints and responding to defendants' first motion to dismiss (doc. # 8). I have been so lenient with regard to discovery deadlines that virtually no discovery has been conducted. I have also granted several motions, allowing the plaintiffs to exceed the page limits for their briefs.

Despite the age of these cases, I gave the plaintiffs yet another chance to file an amended complaint, which they did not do. Instead, the plaintiffs have filed hundreds of pages of motions and exhibits in support of their renewed motion to consolidate and in opposition to defendants' objections to plaintiffs' request to file an amended complaint late, but as timely.

c.    Attempt to Relax Procedural Requirements and Address Merits

I have relaxed procedural requirements for the plaintiffs in an attempt to reach the merits of plaintiffs' claims. I have been hesitant to dismiss this case on procedural grounds. If the plaintiffs had filed the amended complaint due February 10, 2006, even if they filed it late or as an exhibit to the hundreds of pages of subsequent briefing they submitted, I could have considered the substance of that complaint. They did not do so.

Indeed, at the May 2, 2006 hearing, Macpherson indicated that even though she

completed the new amended complaint, she did not submit it, because then I would have been able to see it and it would have become the basis of my decision. Macpherson argued that if she tried to file the amended complaint, I would have considered the substance and merits of that complaint, and that would not be fair, because the merits of the complaint are not at issue here. In fact, the exact opposite is true. For the last four years, I have been trying to get to the merits of plaintiffs' claims.

The record as a whole demonstrates that I have taken great care to preserve plaintiffs' due process rights, and to make sure that plaintiffs have had an opportunity to be heard. Plaintiffs have been unresponsive to those efforts, and the resulting effect on court congestion has been extreme. Therefore, this factor weighs in favor of dismissal.

5.    *Efficacy of Alternative Sanctions*

The age of the case and the extensive opportunities for plaintiffs to comply with court orders demonstrates that there is no lesser sanction that would effectively resolve plaintiffs' failures to meet court-ordered deadlines. A monetary sanction would be an unfair drain on the pro se plaintiffs' resources and would not address the prejudice to the defendants. There are no discovery-related sanctions that would be effective, because the parties have not conducted discovery. An adjournment coupled with a warning of dismissal would not be effective here, because I have already warned the plaintiffs on at least four separate occasions that the case would be dismissed if they failed to comply with court orders and deadlines. *See Scott v. Perkins*, 2005 WL 2327277, 4 (2d Cir. 2005) (suggesting that the court consider the efficacy of an adjournment coupled with a warning of dismissal). Because there is not even a workable complaint in this case, there is really no other possible sanction that would resolve the issue of

the plaintiffs' repeated failure to follow court orders and meet deadlines.  Thus, this factor

weighs in favor of dismissal.

## III.    Conclusion

I am aware that involuntary dismissal is an extreme remedy for a plaintiff's failure to

comply with court orders and deadlines.  In this particular case, however, it is "necessary in order

to prevent undue delays in the disposition of [the] pending case . . . ."  *See Link*, 370 U.S. at

629-30.  I have given priority to the plaintiffs' rights to be heard over the past 3 3/4 years and

have overlooked the congestion and delay that has resulted.  After reviewing the record as a

whole, it is clear that the plaintiffs are simply not responding to my instructions.  *Compare*

Docket Number 60 (February 17, 2005 Order), *with* Docket Number 76 (Jan. 18, 2006

Transcript).  Plaintiffs have refused my offers to provide them with competent counsel.  Despite

over 13 extensions of time over almost four years, the plaintiffs have not submitted an

appropriate complaint.  We keep repeating the same cycle of non-compliance with court orders

and deadlines, and we have reached the point where it is simply not fair to the defendants or

consistent with the ability of the court to administer justice to continue that cycle.  After applying

the five-factor test delineated by the Second Circuit, and finding that all five factors weigh in

favor of dismissal, I have concluded that involuntary dismissal is necessary.

Plaintiffs' request to file an amended complaint late (**doc. # 78**), but as timely is

**DENIED**.  The case is dismissed with prejudice.  Plaintiffs' motion for consolidation (**doc. #77**)

is **DENIED**.  The clerk shall close this case.

It is so ordered.

Dated at Bridgeport, Connecticut, this 16th day of May 2006.

/s/ Stefan R. Underhill

Stefan R. Underhill
United States District Judge